914 So.2d 594 (2005)
STATE of Louisiana, Appellee
v.
Richard Lee SIMS, Appellant.
No. 40,300-KA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 2005.
*595 Louisiana Appellate Project, by Sherry Watters, Paula Corley Marx, for Appellant.
J. Schuyler Marvin, District Attorney, John M. Lawrence, Assistant District Attorney, for Appellee.
Before WILLIAMS, PEATROSS & MOORE, JJ.
*596 PEATROSS, J.
Defendant, Richard Lee Sims, entered a Crosby[1] plea on April 12, 2005, to possession of over 28 grams of cocaine. As part of the plea bargain, he was sentenced to serve five years at hard labor without benefit of parole, probation or suspension of sentence. He was also fined $50,000, but the fine was suspended. Defendant appeals, arguing that the trial court erred in denying his motion to suppress the contraband. For the reasons set forth herein, Defendant's conviction and sentence are affirmed.

FACTS
On December 16, 2003, Defendant was stopped by a Louisiana State Police Trooper, Christopher Joyner, while traveling on I-20 in Bossier Parish. At the preliminary hearing, Trooper Joyner stated that he observed that the windows on the Saturn vehicle driven by Defendant appeared to be tinted too dark. He pulled out to catch up with the vehicle to stop the driver and observed that it was traveling in the outside lane too closely to the vehicle in front of it.
After the stop was made, Trooper Joyner requested Defendant's driver's license. Defendant produced a Texas license and Trooper Joyner "noticed that his hand was shaking" and "that the muscle on the left side of his face was twitching." Trooper Joyner then asked Defendant whether or not he had ever been arrested. Defendant responded that he had been arrested for failure to appear. Trooper Joyner then requested a criminal history for Defendant.
Trooper Joyner attempted to test the level of tinting on the windows of the vehicle, but his meter was malfunctioning and would not register the tint. He issued Defendant a warning since he was unable to test the degree of tint; and, because Defendant had said "he was yielding for me," Trooper Joyner "cut him a break" and gave him only a verbal warning on the "driving so close."
On cross-examination, Trooper Joyner testified that the computers at Troop G were down and that no background check could be run at the time. It was later learned that there were no outstanding warrants for Defendant. At some point, another trooper, George Beck, arrived. The windows were ultimately checked on this trooper's meter and were shown to be illegally tinted.
Trooper Joyner returned Defendant's paperwork; but, as Defendant turned to walk away, Trooper Joyner asked if he "could talk to him a little more, ask him some questions and [Defendant] said yes." Trooper Joyner testified that he then asked Defendant why he had to go to court [regarding the failure to appear he had referenced to Trooper Joyner] and Defendant's reply was that he could not remember. Trooper Joyner then stated that, based on this answer and Defendant's nervousness, he asked Defendant for permission to search his vehicle. Trooper Joyner informed Defendant that he did not have to agree, but Defendant did agree and signed the consent to search form. Trooper Joyner stated that he began the search on the passenger side of the vehicle and that he could feel "some type of bundle" under the seat cover. Underneath the cover was a Saran-wrapped package of what was subsequently tested and shown to be 87.8 grams of cocaine.
Defendant was arrested and charged with possession of over 28 grams of cocaine and conspiracy to distribute cocaine. A hearing on the motion to suppress was *597 set for June 21, 2004. By agreement, the transcript of the preliminary examination hearing and the video recording of the traffic stop were submitted to the trial court. The trial court denied the motion in a written opinion filed on December 7, 2004.
On April 12, 2005, the State and Defendant reached a plea bargain wherein other pending charges would be dismissed in exchange for a Crosby plea. The agreed-upon sentence was a five-year term without benefit of parole, probation or suspension of sentence and a suspended $50,000 fine. In accordance with the agreement, Defendant entered a guilty plea to possession of cocaine weighing over 28 grams.

DISCUSSION
On appeal, Defendant urges only one assignment of error as follows (verbatim):

1. The trial court erred denying (sic) the Motion to Suppress the evidence, an error preserved in the defendant's plea under State v. Crosby, 338 So.2d 584 (La.1976).

La. C. Cr. P. art. 703 provides, in pertinent part:
A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.
* * *
C. A motion filed under the provisions of this Article must be filed in accordance with Article 521, unless opportunity therefor did not exist or neither the defendant nor his counsel was aware of the existence of the evidence or the ground of the motion, or unless the failure to file the motion was otherwise excusable. The court in its discretion may permit the filing of a motion to suppress at any time before or during the trial.
D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
* * *
E. (1) An evidentiary hearing on a motion to suppress shall be held only when the defendant alleges facts that would require the granting of relief. The state may file an answer to the motion. The defendant may testify in support of a motion to suppress without being subject to examination on other matters. The defendant's testimony cannot be used by the state except for the purpose of attacking the credibility of the defendant's testimony at the trial on the merits.
A trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Normandin, 32,927 (La.App.2d Cir.12/22/99), 750 So.2d 321, writ denied, 00-0202 (La.9/29/00), 769 So.2d 550; State v. Williams, 98-1006 (La.App. 5th Cir.3/30/99), 735 So.2d 62, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
Defendant presents the following three arguments in his challenge to the denial of his motion to suppress the cocaine (verbatim):
1. Being stopped as a result of a mistake of law, that window tinting was illegal for this out-of-state driver, renders the stop invalid, and thus, any fruits of this stop are tainted.

*598 2. Questioning the appellant after the initial traffic stop was over commences a second stop for which there was no probable cause.

3. The appellant's consent to the search was not sufficiently attenuated from the two illegal stops to be considered freely and voluntarily given.
We will address each argument in turn. First, we find no merit to Defendant's argument that he was stopped as a result of a mistake of law, rendering the initial stop invalid and tainting any fruits of the stop. The Fourth Amendment of the United States Constitution protects individuals "against unreasonable searches and seizures." Traffic stops are deemed seizures for the purposes of the Fourth Amendment. United States v. Valadez, 267 F.3d 395 (5th Cir.2001). The legality of a traffic stop is analyzed under the framework articulated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. See U.S. v. Breeland, 53 F.3d 100 (5th Cir.1995).
La. R.S. 32:361.1 governs window tinting. It reads, in pertinent part:
B. Except as provided by R.S. 32:361.1(C), no person may operate a motor vehicle with any object or material placed on or affixed to the front windshield or to front side windows of the vehicle so as to obstruct or reduce the driver's clear view through the front windshield or front side windows, nor place on or affix to the front windshield or the front side windows of a motor vehicle, any transparent material if the material alters the color or reduces the light transmission of the windshield or front side windows.
C. The provisions of this Section do not apply to any of the following:
(1) A sun screening device when used in conjunction with automotive safety glazing materials on the front side window, with a light transmission of at least forty percent, all tolerances included, side window behind the driver with a light transmission of at least twenty-five percent, all tolerances included, and rearmost windows with a light transmission of at least twelve percent, all tolerances included. All sun screening devices shall not have a luminous reflectance of more than twenty percent.
* * *
E. Except as provided in Subsections G and H of this Section, anyone who operates a motor vehicle registered in this state in violation of the provisions of this Section shall be fined not more than one hundred fifty dollars for a first offense, not more than two hundred and fifty dollars for a second offense, and not more than three hundred and fifty dollars for a third or subsequent offense.
La. C. Cr. P. art. 841 provides:
A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
The guilty plea in the case sub judice was entered with the reservation that Defendant would be allowed to appeal the denial of the pre-trial motion to suppress. The grounds raised in the memorandum to support the motion to suppress *599 never included the assertion that the initial stop was illegal. Instead, the basis for the motion to suppress was that the detention after the traffic stop ended was prolonged; and, under the circumstances, the consent was not voluntary. The record shows that this new basis for the motion to suppress has been raised for the first time on appeal. This is prohibited under the provisions of La. C. Cr. P. art. 841 since the trial court was not afforded an opportunity to consider the merits of this particular claim. See State v. Cressy, 440 So.2d 141 (La.1983); State v. O'Neal, 501 So.2d 920 (La.App. 2d Cir.1987), writ denied, 505 So.2d 1139 (La.1987).
Assuming, arguendo, that the issue is properly before us, our review of the argument shows that it lacks merit. Regarding the alleged mistake of law committed by Trooper Joyner, we note that, in U.S. v. Miguel, 368 F.3d 1150 (9th Cir.2004), this idea was explained as follows:
We have distinguished between mistakes of fact and mistakes of law when an officer has initiated a traffic stop based on a mistaken belief. "[I]f an officer makes a traffic stop based on a mistake of law, the stop violates the Fourth Amendment." United States v. Twilley, 222 F.3d 1092, 1096 (9th Cir.2000). For example, in United States v. King, 244 F.3d 736 (9th Cir.2001), the officer stopped a car with a placard hanging from the rearview mirror, which he believed was unlawful. Id. at 737-38. Construing the traffic ordinance, we concluded that placing an object in close proximity but not directly on the windshield did not violate the traffic ordinance. Id. at 740. Thus, we held that the officer made a mistake of law and did not have reasonable suspicion to stop the vehicle. Id. at 741-42.
Language in U.S. v. Santiago, 310 F.3d 336 (5th Cir.2002),[2] however, further explains:
Trooper Raley stated that he understood the statute to prohibit affixing any object to a car's windshield, unless otherwise permitted by law. Although it is doubtful whether Santiago could have been convicted for violating 32:361.1(B) because the object did not obstruct Santiago's vision, Santiago arguably was in violation of the statute. Therefore, Raley was justified in continuing to detain Santiago for violating 32:361.1(B).
We find that Trooper Joyner's belief that Defendant was in violation of the window tinting statute was sufficient to justify the traffic stop.
In addition, the record is clear that Trooper Joyner stopped Defendant for not one, but two, suspected traffic violations  the tinted windows and traveling too closely behind another vehicle. There is nothing in the record to dispute the trial court's finding that this driver was stopped for both violations. This court in State v. Arnold, 34,194 (La.App.2d Cir.12/6/00), 779 So.2d 840, stated:
Moreover, the stop of the Escort was based on Trooper Coleman's observation that the car was following another vehicle too closely. A traffic stop made on the basis of following too closely, a violation of La. R.S. 32:81, is a valid stop. State v. Shapiro, 98-1949 (La.App. 4th Cir.12/29/99), 751 So.2d 337.
Thus, even if the officer made a mistake of law concerning the stop for the tinted windows, the officer made a valid, lawful stop *600 for following too closely. This argument lacks merit.
In his second argument, Defendant asserts that, once the written and verbal warnings had been issued, the detention should have ended and he should have been allowed to leave. He argues that the trooper "gained no new information before he started the second questioning and detention." Defendant submits that "what arguably began as a lawful traffic stop rapidly deteriorated into an unlawful detention grounded only in the trooper's unreasonable suspicions of criminal activity." He suggests that it was during the course of this unlawfully prolonged detention that the trooper secured Defendant's consent to search the vehicle. Accordingly, Defendant argues that his consent was not validly obtained and the illegally seized evidence must be suppressed. We disagree.
In its written opinion denying the motion to suppress, the trial court found that "the consensual interrogation following the end of a valid traffic stop did not implicate Fourth Amendment concerns," relying on the holding in U.S. v. Brigham, 382 F.3d 500 (5th Cir.2004), which states:
Mere police questioning, without some nonconsensual restraint on one's liberty, is not a "seizure" or detention. Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). Indeed, this court has recently noted that a consensual interrogation may follow the end of a valid traffic stop and that such consensual encounters do not implicate Fourth Amendment concerns. United States v. Sanchez-Pena, 336 F.3d 431, 442-43 (5th Cir.2003).
A review of the testimony reveals that Trooper Joyner indicated that he had ended the initial traffic stop by returning Defendant's paperwork and giving him both a written and verbal warning. Trooper Joyner also testified, however, that he was puzzled by both Defendant's extreme nervousness, which was evidenced by the shaking of his hand and facial tic. Further, Trooper Joyner stated that he was suspicious of Defendant's odd answer regarding the arrest for failure to appear. For these reasons, Trooper Joyner made the decision to question Defendant further.
The video recording of the traffic stop shows that Trooper Joyner was not displaying any body language that was threatening to Defendant. Trooper Joyner's voice was calm when he asked Defendant if he could question him further. Nothing from the trooper's actions could have reasonably led Defendant to believe that he was not free to leave or to refuse to answer the questions. Defendant was not forced to remain or answer questions; rather he exercised his choice to do so.
This court in State v. Fikes, 616 So.2d 789 (La.App. 2d Cir.1993), stated:
The mere fact that Trooper Stephens questioned defendant did not compel defendant to respond to those inquiries. The defendant was free to choose not to answer such a question. See State v. Ponder, 607 So.2d 857 (La.App. 2d Cir.1992); State v. Desormeaux, 569 So.2d 283 (La.App. 2d Cir.1990).
Accordingly, we find that the trial court's conclusion that this was a consensual interrogation is supported by this record and the argument that there was no probable cause for a second stop becomes moot.[3]
Finally, Defendant argues that, following the alleged illegal detention, even *601 though he was told that he did not have to consent to the search, "it could not have appeared that way objectively under the circumstances." Defendant asserts that more officers were arriving on the scene and that Defendant's consent was mere acquiescence to the authority of the officer and that the State did not prove a free and voluntary consent. We disagree.
The video recording of the traffic stop shows the entire roadside encounter and supports the State's contention that there was no coercion nor illegal detention to obtain the consent to search. The State correctly suggests that the "totality of the circumstances, including the short time from the inception of the traffic stop until the seizure of evidence, the evidence was not the product of an illegal search."
As previously discussed, the stops of Defendant were not illegal detentions; and, thus, the trooper's request to search the vehicle does not have to be attenuated from them. The State, however, still has the burden of proving that the consent was voluntary, even though this driver was not being illegally detained.
In State v. Ossey, 446 So.2d 280 (La.1984), cert. denied, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984), the supreme court stated:
Since defendant was not being illegally detained at this time, whether consent to accompany the agents was in fact voluntary is to be determined by a review of the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Voluntariness is a question of fact to be determined by the trial judge under the facts and circumstances of each case. The factual determinations of the trial judge are entitled to great weight on appellate review. State v. Edwards, 434 So.2d 395 (La.1983); State v. Bourgeois, 388 So.2d 359 (La.1980). Upon a review of the surrounding circumstances, we cannot say that the trial judge's finding of voluntariness was in error. The request to accompany the agents was made in a public place by agents dressed in plain clothes. There was no threat, show of force, or physical touching. The agent's statement to defendant was phrased in the form of a request instead of a demand. Finally, the request was not so overbearingly coercive to defendant as to render his consent involuntarily; he had already refused to allow a search of his bag, thereby demonstrating his knowledge of and ability to exercise his right to decline the agent's requests. Therefore, since defendant voluntarily accompanied the agents, he was not being illegally detained when he consented to the search in the agents' office.
The video recording shows that only 11 minutes elapsed from the time Defendant exited his vehicle until the officer commenced the consensual search. There is nothing to indicate that Trooper Joyner was overbearing or in any manner threatening to Defendant.
Trooper Joyner testified that he was given verbal permission to search the car. He further stated, "[t]hen I presented him with the Louisiana State Police consent to search form, which he voluntarily signed and he appeared to read it. And I explained the form to him, explained that he did have the right to refuse." The written consent to search form was admitted into evidence at the preliminary examination hearing. The form reads as follows:
No promise, threat, or coercion of any kind has been made against me by the Louisiana Office of State Police and I have been informed by the above named State Police Officer that I may refuse to consent to any search and that *602 I may revoke my consent to search at any time.
In State v. Crews, 28,153 (La.App.2d Cir.5/8/96), 674 So.2d 1082, this court stated:
To justify a warrantless search, the state must show that the search falls within one of the narrowly drawn exceptions to the warrant requirement. State v. Barrett, 408 So.2d 903 (La.1981). A consensual search is an exception to both the warrant and probable cause requirements. State v. Walker, 530 So.2d 1200 (La.App. 2d Cir.[1988]), writ denied, 532 So.2d 763 (La.1988). Oral consent is valid. However, consent to a search must be given freely and voluntarily, and the burden of proof on this issue rests upon the state. State v. Ossey, 446 So.2d 280 (La.1984), cert. denied, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984). State v. Haygood, 26,102 (La.App.2d Cir.8/17/94), 641 So.2d 1074, writ denied, 94-2373 (La.1/13/95), 648 So.2d 1337. When reviewing a trial court's ruling on a motion to suppress, based on findings of fact, great weight is placed upon the trial court's determination because it had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Jackson, 26,138 (La.App.2d Cir.8/17/94), 641 So.2d 1081.
In the present case, the trial court found that Trooper Joyner's action of obtaining the verbal and written consent to search after explaining to Defendant that he did not have to sign the consent "constituted a voluntary, independent act of free will and was therefore validly obtained." We find nothing in this record to show that the trial court has erred in its determination.

ERROR PATENT
The agreed-upon sentence in this case is illegally lenient since the fine was suspended. La. R.S. 40:967 provides, in pertinent part:
C. Possession. It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, as provided in R.S. 40:978 while acting in the course of his professional practice, or except as otherwise authorized by this Part.
* * *
F. Other penalties for possession.
(1) Except as otherwise authorized in this Part:
(a) Any person who knowingly or intentionally possesses twenty-eight grams or more, but less than two hundred grams, of cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule II(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than five years, nor more than thirty years, and to pay a fine of not less than fifty thousand dollars, nor more than one hundred fifty thousand dollars.
G. With respect to any person to whom the provisions of Subsection F are applicable, the adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld, nor shall such person be eligible for probation or parole prior to serving the minimum sentences provided by Subsection F.
An illegal sentence may be corrected at any time under the provisions of La. C. Cr. P. art. 882. Further, an appellate court may notice sentencing errors as error patent and has discretion as to whether or not it corrects an illegal sentence. Since the suspension of this fine *603 was part of the plea bargain and because the trial court specifically found Defendant to be indigent, it is therefore a viable option to decline to impose the fine in this case and we will not disturb the suspension of the fine in this case.

CONCLUSION
For the foregoing reasons, the conviction and sentence of Defendant, Richard Lee Sims, are affirmed.
AFFIRMED.
NOTES
[1] State v. Crosby, 338 So.2d 584 (La.1976).
[2] Portions of the holding in Santiago, supra, which resulted in the evidence being suppressed, have been called into question, but the finding regarding the trooper's initial stop has not.
[3] U.S. v. Santiago, 310 F.3d 336 (5th Cir.2002) holds that only "reasonable suspicion" is required for a traffic stop.