PER CURIAM.
 
 *
 

 | [The state has charged defendant with a violation of La.R.S. 14:95.1, convicted felon in possession of a firearm. After a hearing on defendant’s motion to suppress the handgun taken from him by New Orleans Police Officers, the trial court upheld the validity of the seizure. However, the Fourth Circuit granted defendant’s writ of review and reversed the lower court’s ruling.
 
 State v. White,
 
 08-0389 (La.App. 4th Cir.4/9/08). The state sought review of that order in this Court. For the reasons that follow, we reverse the Fourth Circuit’s order, reinstate the ruling of the trial court, and remand this case for further proceedings.
 

 The evidence presented at the hearing on the motion to suppress established the following. On the evening of November 11, 2007, Officers Stamps and Williams, conducting a routine patrol, pulled over a vehicle they observed in the area of Chartres and Canal Streets, on the edge of the French Quarter in New |2OrIeans. According to the officers, the windows of the vehicle were so heavily tinted that they could barely make out the interior of the car or a temporary tag placed in the rear window. After stopping the vehicle, Officer Stamps went to the driver’s side and Officer Williams approached on the passenger side. While Stamps spoke with the driver of the car and determined that he was operating the vehicle although his license had been suspended, Officer Williams peered through the open window on the passenger side and observed defendant sitting in the vehicle with a handgun on his lap. According to Officer Williams, defendant asked if he could hand the weapon to her. The officer instead reached into the vehicle, took custody of the gun, and walked back to her patrol unit to run a background check on the weapon. Defendant produced a bill of sale for the weapon and a computer check run from the patrol unit determined that the gun had not been stolen and that he lawfully owned it. Officer Williams also determined from the computer check that defendant appeared to have had several prior arrests but no prior felony convictions.
 

 Officer Stamps placed the driver of the vehicle under arrest and made arrangements for a relative to retrieve the vehicle, as defendant did not possess a driver’s license. Stamps also informed defendant that for his safety and the safety of the general public, the officers would retain custody of the weapon and that he could retrieve it on the next business day by appearing at police headquarters and presenting his identification. Officer Stamps conceded at the hearing that it would not have been against the law for defendant to have walked away on Canal Street with a gun fully exposed in his hand. However, the officer explained that there were “a lot of tourists out there, a lot of hotels with cameras, anything could have | .¡happened upon him leaving and I was not going to take that chance.” At the same time, Officer Stamps acknowledged that while defendant had appeared somewhat nervous to Officer Williams, he was “just a little anxious ... he wanted the gun back.” The officers secured the vehicle on the scene and waited for the driver’s relative to arrive to remove the vehicle. Although not sure how defendant left the scene, Officer Williams “supposed” that he just
 
 *441
 
 walked away. At the conclusion of the traffic stop, which led to the arrest of the driver for operating the vehicle on a suspended license and for driving a vehicle with illegally tinted windows, Officer Williams then delivered the gun to the property and evidence room at police headquarters.
 

 On the following day, Sergeant Jeff Sis-lo, acting in a supervisory capacity, reviewed the report of the incident by Officer Williams. Sislo decided to double check Williams’s work and ran a search of defendant’s name in the police department’s computer system. Sergeant Silso observed that the computer records listed defendant as having no prior felony convictions. However, he also noticed data revealing that defendant had been on probation for distribution of marijuana, which Silso knew was a felony offense, from 1998 to 2002. Sergeant Sislo then used his computer to access the docket master of the case from Orleans Parish Criminal Court and confirmed that defendant had, in fact, pleaded guilty to distribution of marijuana in 1998 and that he was therefore a convicted felon.
 

 After confirming defendant’s status, Sergeant Sislo went to the property room and redesignated the handgun as evidence to keep it from being released. He then helped Officer Williams prepare a warrant for defendant’s arrest based on an accompanying affidavit which fully set forth the circumstances under which the police had obtained the handgun, retained custody of it, and then determined that ^defendant had a prior felony conviction and had therefore committed a violation of La.R.S. 14:95.1. A magistrate signed the warrant on the night of November 13, 2007, and defendant’s arrest followed three days later. According to the incident report filed into the record, the arrest occurred at police headquarters when defendant arrived to pick up his gun and the officers on duty discovered the outstanding warrant issued by the magistrate.
 

 In denying defendant’s motion to suppress, the trial court took into account the explanation offered by Stamps for the decision to keep the weapon and concluded that “it was reasonable to allow the officers to take the gun and put the gun into central evidence and property and allow the defendant to come in the next day and pick it up.” On that premise, the court ruled that the police then acquired probable cause to arrest defendant and to retain the weapon when Sergeant Sislo double checked defendant’s name in the computer system and determined his status as a convicted felon.
 

 However, in reviewing that judgment, the court of appeal agreed with defendant that the officers had failed to offer a reasonable explanation for confiscating defendant’s weapon which appeared, from all of the circumstances known to them at the time, to have been in his lawful possession. To the extent that “the State had no reason to believe that the defendant was committing a crime at the time that the defendant’s property was seized,” the court of appeal concluded that “the seizure violated the state and federal constitution.”
 
 White,
 
 08-0389, p. 1 (citing
 
 United States v. Place,
 
 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)).
 

 We agree with the court of appeal that the Supreme Court’s decision in
 
 Place
 
 stands generally for the proposition that “the limitations applicable to | fiinvestigative detentions of the person should define the permissible scope of an investigative detention of the person’s [effects] on less than probable cause.”
 
 Place,
 
 462 U.S. at 709, 103 S.Ct. at 2645. The decision specifically addressed circumstances in which the police seized the defendant’s luggage after he landed at his destination at La
 
 *442
 
 Guardia Airport in New York and removed the suitcases to Kennedy Airport where they held them for approximately 90 minutes before a drug detection dog arrived and alerted on the luggage. The officers thereby acquired probable cause to obtain a search warrant and to retrieve the cocaine hidden inside the suitcases. In this context, the Supreme Court rejected the argument that “seizures of property are generally less intrusive than seizures of the person,” observing that “[particularly in the case of detention of luggage within the traveler’s immediate possession, the police conduct intrudes on both the suspect’s possessory interest in his luggage as well as his liberty interest in proceeding with his itinerary.”
 
 Id.,
 
 462 U.S. at 708, 103 S.Ct. at 2645. The Supreme Court concluded that “[t]he length of the detention of respondent’s luggage alone precludes the conclusion that the seizure was reasonable in the absence of probable cause.”
 
 Place,
 
 462 U.S. at 709, 103 S.Ct. at 2645. Thus, while declining to “adopt any outside time limitation for a permissible
 
 Terry [v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] stop,” the court noted that “we have never approved a seizure of the person for the prolonged 90-minute period involved here and cannot do so on the facts presented by this case.”
 
 Id.,
 
 462 U.S. at 709-10, 103 S.Ct. at 2646 (citing
 
 Dunaway v. New York,
 
 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979))(prolonged detention of defendant on less than probable cause at station house for investigation violated Fourth Amendment).
 

 | (¡In the present case, although defendant’s privacy or liberty interests were not implicated by the officers’ decision to retain custody of the gun, a seizure unquestionably occurred for purposes of the Fourth Amendment and La. Const, art. 1, § 5, as to which the defendant signaled to Officer Stamps by his demean- or that he did not consent.
 
 Cf. Soldal v. Cook County, Ill.,
 
 506 U.S. 56, 61-62, 113 S.Ct. 538, 543-44, 121 L.Ed.2d 450 (1992)(“A ‘seizure’ of property ... occurs when there is some meaningful interference with an individual’s possessory interests in that property.... [T]he [Fourth] Amendment protects property as well as privacy.”) (internal quotation marks, citations, footnote omitted). We may assume here that, however well intentioned, the officers’ safety rationale did not reasonably accord with the duty placed on them by the legislature to return the weapon to defendant contemporaneously with the traffic stop under circumstances in which he had remained free to leave. La.C.Cr.P. art. 215.1(C)(in the course of an investigatory detention, “[i]f the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning,
 
 at which time
 
 he shall either return it, if lawfully possessed, or arrest such person.”) (emphasis added).
 

 However, we disagree with the court of appeal that
 
 Place
 
 dictates suppression of the firearm as evidence in the present case.
 
 Place
 
 also acknowledged that “[t]he intrusion on possessory interests occasioned by a seizure of one’s personal effects can vary both in its nature and extent.”
 
 Id.,
 
 462 U.S. at 705, 103 S.Ct. at 2643 (footnote omitted). Officers Stamps and Williams lawfully stopped the vehicle in which defendant was riding on the basis of one or more traffic violations that they had observed.
 
 See, e.g.,
 
 La. R.S. 32:361.1 (regulating the tinting of car windows and providing criminal penalties and fines for 17infractions); La.R.S. 47:521 (requiring the placement of temporary registration license plate in a clearly visible place and position);
 
 State v. Sims,
 
 40,300, p. 7 (La.App. 2nd Cir.10/26/05), 914 So.2d 594, 599;
 
 State v. Wyatt,
 
 99-2221, p. 2
 
 *443
 
 (La.App. 4th Cir.9/27/00), 775 So.2d 481, 483. Apart from defendant’s voluntary tender of the weapon lying in his lap, Officer Williams was entitled to take possession of the handgun during the traffic stop for her own protection and the safety of her partner.
 
 See, e.g., Michigan v. Long,
 
 463 U.S. 1032, 1049-50, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983);
 
 State v. Husband,
 
 437 So.2d 269, 271 (La.1983);
 
 State v. Cobb,
 
 419 So.2d 1237, 1243 (La.1982). The officers informed defendant where they were taking the weapon and when he could recover it, during business hours on the following day, a matter of only a few hours, as the stop occurred on a Sunday night at approximately 8:00 p.m.
 
 Cf. Place,
 
 462 U.S. at 710, 103 S.Ct. at 2646 (“Although the 90-minute detention of respondent’s luggage is sufficient to render the seizure unreasonable, the violation was exacerbated by the failure of the agents to accurately inform respondent of the place to which they were transporting his luggage, of the length of time he might be dispossessed, and of what arrangements would be made for return of the luggage if the investigation dispelled the suspicion.”).
 

 Thus, the intrusion on defendant’s pos-sessory interests was relatively minimal. It also clearly appears that the officers did not exploit physical custody of the weapon as a means of furthering an ongoing investigation by subjecting it to inspection or testing. The physical location of the handgun in the property room of the police department had no bearing on the discovery by Sergeant Sislo, as he reviewed Officer Williams’s incident report based on her personal observations at the scene, that defendant’s status as a convicted felon made his possession of the Rgun illegal. All that changed in the intervening hours was the more sophisticated eye Sergeant Silso brought to the same computer data accessed by Officer Williams that would have justified her immediate arrest of defendant and seizure of the gun incidental to that arrest if she had noticed and resolved the discrepancy in the data.
 
 Husband,
 
 437 So.2d at 271.
 

 Given these circumstances, we conclude that the arrest warrant secured by Officer Williams from the magistrate on the following night, a judicial finding made approximately 24 hours after the traffic stop that probable cause existed for arresting defendant and for seizing the gun as evidence of a crime, constituted an intervening circumstance that dissipated any taint from the initial decision to confiscate the weapon overnight and attenuated any pos-sessory interests defendant retained in the weapon, which had become subject to the state’s right to forfeit crime-related contraband. La.C.Cr.P. art. 891(A)(“For purposes of this Article, a firearm or other dangerous weapon either used in the commission of a felony offense or the use of which constitutes an element of a felony offense may be declared to be crime-related contraband which may be seized by a law enforcement officer in the course of an arrest of issuance of summons or may be seized by order of court pursuant to other provisions of law.”);
 
 see State v. Hill,
 
 97-2251 (La.11/6/98), 725 So.2d 1282 (even assuming that
 
 Terry
 
 stop of defendant was unlawful, discovery of outstanding arrests warrants constituted an intervening circumstance dissipating the taint of initial police misconduct and rendering admissible evidence discovered incident to defendant’s subsequent arrest on the warrants).
 

 | ¡Accordingly, the Fourth Circuit’s order is vacated, the trial court’s judgment denying the motion to suppress is reinstated, and this case is remanded for further proceedings consistent with the views expressed herein.
 

 
 *444
 
 COURT OF APPEAL REVERSED; JUDGMENT OF THE DISTRICT COURT REINSTATED; CASE REMANDED.
 

 JOHNSON, J., dissents.
 

 *
 

 Calogero, Chief Justice, retired, participated in the decision which was argued prior to his retirement.