STEWART, J.
The defendant, John Love Robinson, was convicted of possession with intent to distribute a Schedule I, controlled dangerous substance, namely heroin. He was adjudicated a fourth felony offender and sentenced to life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. The defendant now appeals. For the reasons discussed below, we affirm the defendant’s conviction, vacate the habitual offender adjudication and enhanced sentence, and remand the matter for a new habitual offender proceeding.
FACTS
On January 5, 2006, Shreveport police officers, along with the SWAT team, executed a “no knock” search warrant at the defendant’s residence,1808 Acorn Street, Shreveport, Louisiana. Upon the officers’ entry, the defendant ran into a bathroom and attempted to flush a heroin-filled balloon. After the officers discovered the heroin-filled balloon floating in the toilet, they dismantled the toilet in search of more narcotics. Agent Henry Whitehorn (“Agent Whitehorn”) and several other officers went underneath the house and opened the pipe leading from the toilet. Inside the pipe, officers found seven additional heroin-filled balloons. Another balloon was discovered inside the house behind a floor heater. Officers also found digital scales and approximately $657.00 inside the house. Consequently, the defendant was arrested and charged with possession with intent to distribute a Schedule I, CDS, namely, heroin. Defendant was formally charged by bill of information on March 28, 2006, and pled not guilty.
|2The defense filed several pre-trial motions, including a motion to suppress evidence. On December 20, 2007, a hearing was held on the motion to suppress. Agent Whitehorn testified that he prepared a search warrant for the residence located at 1808 Acorn Street based upon information obtained from a confidential informant (“Cl”). According to Agent Whitehorn, the confidential informant went to the defendant’s residence on three separate occasions and purchased heroin packaged in balloons from the defendant. Agent Whitehorn testified that these were controlled buys, in that the Cl was wired, both the Cl’s person and vehicle were searched prior to and after the buys, and Agent Whitehorn was present outside the defendant’s residence during the buys. After each buy, the substance inside the balloon was field tested and identified as heroin. Based upon that information, Agent Whitehorn prepared an affidavit for a “no knock” search warrant, which was issued on January 4, 2006.
On the following day, at 5:30 a.m., Agent Whitehorn, the SWAT team and other officers executed the search warrant. Once the SWAT team made entry into the residence, they saw the defendant run toward the bathroom. Inside the bathroom, floating in the toilet was a balloon of the same type used in the Cl purchases. Agent Whitehorn testified that no one else was at the residence, and that they found mail bearing the defendant’s name. At the conclusion of the search, the defendant was arrested for possession with intent to distribute heroin.
|¾At the conclusion of the hearing, the defense requested the identity of the confidential informant, to which 1’equest the *1117 state objected. The court stated that the issue would be addressed at a later hearing.
A trial by jury began on January 28, 2008. The state called Agent Whitehorn as its first witness. For the most part, Agent Whitehorn’s testimony at trial mirrored his testimony given during the hearing on the motion to suppress. At trial, Agent Whitehorn testified that executing the search warrant at 5:30 a.m. allowed for the element of surprise and also helped to ensure the safety of the officers. Entry into the residence was made by the SWAT team using a ram to forcibly enter. Once inside, the officers noticed that the defendant, who was dressed in “street clothes” and wearing latex gloves, ran toward the bathroom and attempted to flush a balloon. After finding a balloon floating in the toilet, the officers dismantled the toilet, but no more balloons were found. Believing that more balloons were flushed, several officers went under the house and opened the pipe leading from the bathroom. Inside the pipe, they recovered seven additional balloons. Agent Whitehorn testified that he field-tested one balloon, which tested positive for heroin, and he sent the rest to the crime lab. Inside the house, the officers recovered $657.00 in cash, of which $60.00 was sheriffs office buy funds, and digital scales. Agent Whitehorn identified the defendant in open court.
On cross-examination, the defense counsel postulated that the digital scales found in the residence could be used to weigh jewelry. However, on redirect, Agent Whitehorn testified that the officers did not find any evidence |4of a jewelry business. He also testified that they did not find any evidence that the defendant was a heroin user.
Sergeant Carl Townley, an expert in the sale and distribution of narcotics, testified that heroin is typically transported to the United States in balloons. In his expert opinion, heroin addicts do not store heroin because they keep using it until it’s all gone. Therefore, a person who possessed more than two grams of heroin, with nothing to inject the heroin, would more likely be a dealer rather than a user. He stated that heroin addicts do not wear latex gloves because the purpose of the gloves would be to prevent the narcotics from penetrating the skin, which is not a concern of an addict. He further opined that if someone has narcotics and scales, then the scales are generally used to weigh the narcotics for distribution. Sergeant Town-ley also testified that, in his opinion, given the fact that the defendant was wearing latex gloves, had a large amount of heroin, and there was no evidence suggesting that he was a user, the defendant is a distributor of heroin rather than a user.
Bruce Stentz, an expert in forensic chemistry, testified that he received the drug evidence seized from the defendant. In his expert opinion, the evidence tested was positive for heroin. He further stated that the weight of the substance and the balloon was 4.07 grams.
The defendant testified on his own behalf. He disclosed that he had prior drug convictions, and that he was on probation when he was arrested for the instant offense. He further testified that he was self-employed in the business of buying scrap gold and silver, thus justifying his possession of the digital scales police found in his home. Defendant also explained that the | .^reason why he was wearing latex gloves was because he was preparing to mix roach spray. Regarding the heroin-filled balloons, the defendant denied any and all knowledge of the balloons found at his residence.
On cross-examination, the defendant testified that he did not tell the police the reason he was wearing the latex gloves *1118 because “he did not have a chance to tell them anything.” He also testified that he had $60,000 in cash at his house, despite the fact that there was no previous testimony regarding such a large sum of money. Defendant reiterated that he did not possess any heroin, and he insinuated that someone planted the heroin in his house.
On January 30, 2008, the jury returned a verdict of guilty of possession with intent to distribute heroin, a Schedule I CDS. The state filed a fourth felony habitual offender bill of Information on March 8, 2008. An amended fourth felony bill of information was filed on November 13, 2008.
According to the minutes, in February 5, 2009, the defendant was sentenced to serve 20 years’ imprisonment at hard labor without the benefit of parole, probation or suspension of sentence and to pay a fine of $20,000.00 and court costs, or in default thereof to serve three years in the parish jail. The case was set for multiple offender hearing.
On November 12, 2009, the hearing on the multiple offender bill of information was held. Lieutenant McDonnell, a fingerprint comparison and analysis expert, testified regarding the prior convictions of the defendant which identified defendant by fingerprint comparison as the same person who was convicted for three prior offenses that occurred in 1981, 1988 and 1998.
IfiThe defense asserted that the evidence introduced by the state, namely a fingerprint card with an arrest date of November 7, 1980 for possession of heroin, and a judgment from the U.S. District Court, Northern District of Texas, Fort Worth Division indicating a guilty plea to possession of phenmetrazine tables and cocaine, failed to adequately prove that it was this defendant who was arrested and subsequently convicted in 1981. The defendant interjected and decided to speak about the 1981 conviction in Fort Worth, Texas. He admitted that he was arrested for suspected heroin at the Fort Worth airport, but he stated that the substance was not heroin. He further stated that he “copped to a lesser charge in order to get out of jail.” By defendant’s own admission, he confirmed the state’s evidence to be accurate. The defendant continued to speak regarding the 1981 conviction. He argued that he received a one year hard labor sentence, and according to his interpretation of the statute, in Texas that was a misdemeanor. Thus, he did not understand how that conviction could now be a felony under Louisiana law for purposes of the habitual offender statute. Considering the arguments made by everyone, the court took the matter under advisement. At this time, the court addressed the defendant’s original sentence and amended it to reflect one year in parish jail in lieu of fines and court costs to comply with La. C. Cr. P. art. 884.
On December 17, 2009, the court reconvened to rule on the habitual offender bill. However, defense counsel was present but not defendant. Noting the defendant’s absence, the state agreed to reset the matter. The record revealed that a discussion took place off the record, and following that 17discussion, the court adjudicated the defendant a fourth felony offender and scheduled sentencing for another day. Defense counsel did not raise an objection.
On March 8, 2010, the defendant was sentenced to life imprisonment under the habitual offender statute. Defense’s motions for post-judgment verdict of acquittal and motion to reconsider were denied. The defendant now appeals.
LAW AND DISCUSSION

Motion to Suppress

In the first assignment of error, the defense contends that the trial court erred *1119 in denying the defendant’s motion to suppress evidence. Moreover, the defense suggests that the search warrant failed to set forth particularized concerns for the authorization of a “no knock” search warrant. Therefore, he argues the motion to suppress all evidence seized as a result of the warrant should have been granted.
A trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Whitehead, 42,677 (La.App. 2 Cir. 4/2/08), 980 So.2d 243, writ denied, 2008-1096 (La.1/9/09), 998 So.2d 718; State v. Normandin, 32,927 (La.App. 2 Cir. 12/22/99), 750 So.2d 321.
Great weight is placed upon the trial court’s ruling on a motion to suppress in regard to the finding of facts because it had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Crews, 28,153 (La.App.2d Cir.05/08/96), 674 So.2d 1082, 1084, citing State v. Jackson, 26,138 (La.App.2d Cir.08/17/94), 641 So.2d 1081. When reviewing a trial court’s ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion, but also may consider pertinent evidence given at trial. State v. Turner, 37,162 (La.App.2d Cir.1/29/03), 859 So.2d 911, writ denied, 2003-3400 (La.3/26/04), 871 So.2d 347.
Accordingly, this Court reviews the district court’s ruling on a motion to suppress under the manifest error standard in regard to factual determinations, while applying a de novo review to its findings of law. State v. Hemphill, 41,526 (La.App.2d Cir.11/17/06), 942 So.2d 1263, 1271, writ denied, 2006-2976 (La.3/9/07), 949 So.2d 441, citing State ex rel. Thibodeaux v. State, 2001-2510 (La.03/08/02), 811 So.2d 875.
La. C. Cr. P. art. 224 states:
In order to make an arrest, a peace officer, who has announced his authority and purpose, may break open an outer or inner door or window of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, where the person to be arrested is or is reasonably believed to be, if he is refused or otherwise obstructed from admittance. The peace officer need not announce his authority and purpose when to do so would imperil the arrest.
An officer who executes a search warrant may use such means and force as is authorized for an arrest. State v. Miskell, 98-2146 (La.10/19/99), 748 So.2d 409. In upholding the reasonableness of the no knock entry, “it is well recognized that a police officer’s past experience, training, and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable.” Id.
19In State v. Thomas, 329 So.2d 704 (La.1976), the supreme court held that the no knock entry into the defendant’s residence was reasonable because the officer had reasonable belief that the defendant would be armed and the evidence sought to recover could easily be disposed of. Thus, an announced entry of the officer would likely have imperiled the arrest of the defendant. See also State v. Johnson, 27,522 (La.App.2d Cir.12/6/95), 665 So.2d 1237.
In Richards v. Wisconsin, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), the supreme court held that an officer may dispense with the knock-and-announce requirement when “they have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, *1120 or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.”
The requirement of an objection shall not apply to the court’s ruling on any written motion. La. C. Cr. P. art. 841(B). However, a new basis for an objection cannot be raised for the first time on appeal. State v. Cressy, 440 So.2d 141 (La.1983); State v. Sims, 40,300 (La.App.2d Cir.10/26/05), 914 So.2d 594; State v. O’Neal, 501 So.2d 920, 924 (La.App. 2d Cir.1987), writ denied, 505 So.2d 1139 (La.1987). A defendant bears the burden of proof of the ground of his motion at the trial on the motion to suppress. La. C. Cr. P. art. 703(D).
Although the motion to suppress is a written motion, and therefore not subject to being waived if no objection is made, the defense, however, failed [mto raise the issue of the “no knock” order in the motion to suppress pursuant to La. C. Cr. P. art. 841(B). Since the trial court was not afforded an opportunity to consider the merits of this claim, the defense is precluded from raising this issue for the first time on appeal. Cressy, supra; Sims, supra; O’Neal, supra.
Furthermore, the particular circumstances of this case warranted the no knock order in the search warrant. At the suppression hearing, Agent Whitehorn testified that he requested the search warrant of the defendant’s residence due to the previous observations and information from a confidential informant that the defendant was selling heroin, packaged in balloons, from his residence at 1808 Acorn Street in Shreveport. Agent Whitehorn further testified that after looking into the defendant’s criminal history, they decided to execute the warrant in the early morning to surprise the defendant and also to keep the officers safe.
Under the particular circumstances of this case, the officers’ act of knocking and announcing their presence would have likely rendered the entire search of the defendant’s residence futile, because the announcement would have given defendant enough time to successfully dispose of the heroin balloons, which he was attempting to do upon the officers’ entry. Thus, it was reasonable for the officers to enter without knocking and announcing.
We find that the trial court did not err in denying the motion to suppress. This assignment is therefore without merit.
[ ^Adjudicating the Defendant as a Fourth Felony Offender
In the second assignment of error, the defense argues that the trial court erred in adjudicating the defendant a fourth felony offender, since the defendant was not present, in contravention of La. C. Cr. P. art. 831. Additionally, the defense contends that the state failed to prove that the defendant was the person convicted of the 1981 felony in the Northern District of Texas, Forth Worth Division. Therefore, the defense urges that the adjudication as a fourth felony offender should be vacated.
La. C. Cr. P. art. 831, in pertinent part, provides:
A. Except as may be provided by local rules of court in accordance with Articles 522 and 551, a defendant charged with a felony shall be present:
(6) at the rendition of the verdict or judgment, unless he voluntarily absents himself.
La. C. Cr. P. art. 834, states:
The defendant has a right to be present, but his presence is not essential to the validity of any of the following proceedings in a criminal prosecution:
(1) the making, hearing of, or ruling on a preliminary motion or application addressed to the court;
*1121 (2) the making, hearing of, or ruling on a motion or application addressed to the court during the trial when the jury is not present; and
(3) the making, hearing of, or ruling on a motion or application made after his conviction.
In felony cases the defendant shall always be present when sentence is pronounced. La. C. Cr. P. art. 835.
The habitual offender statute provides that following a contradictory hearing, a defendant shall be adjudicated a second, third or fourth felony | ^offender. The statute makes no requirement for presence of the defendant upon rendition of the court’s findings. La. R.S. 15:529.1(D)(2).
The presence of the defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only. State v. Kahey, 436 So.2d 475 (La.1983). Therefore, the presence of the defendant is only essential at proceedings which have a reasonably substantial relation to the fullness of the opportunity of the defendant to defend against the charge. Id.
La. R.S. 15:529.1 requires proof of a prior felony conviction before a felony sentence may be enhanced. With respect to prior guilty pleas, the Louisiana Supreme Court held in State v. Shelton, 92-3070 (La.7/1/93), 621 So.2d 769, that it is the state’s burden to prove the existence of the prior guilty plea and that defendant was represented by counsel. If the state meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Then if the defendant meets his burden, the state must meet the burden of proving the plea was constitutional by introducing a “perfect” transcript. Id.
Here, defense argues that the defendant’s absence at the rendition of the ruling on the habitual offender bill of information was in error pursuant to La. C. Cr. P. art. 831. Despite the defense’s contention, the habitual offender statute does not explicitly require the presence of the defendant at the rendition of the ruling. La. R.S. 15529.1(D)(2).
| |RThe defendant was present at the habitual offender hearing wherein evidence was adduced as to his prior convictions and where the defendant spoke on his own behalf. Thus, the defendant had a full opportunity to defend the allegations of the habitual offender bill of information. Kahey, supra. Additionally, the defendant’s counsel was present at the ruling to represent the defendant’s interest in his absence. At the start of the hearing, a bench conference was held regarding the defendant’s absence and whether to reset the matter. Following the bench conference, the court adjudicated the defendant a fourth felony offender. At no time did the defense counsel object to a ruling being issued in the defendant’s absence. Lastly, the court did not sentence the defendant at that time, but rather continued sentencing until the defendant could be brought back to Caddo Parish. Therefore, considering all of the above, if the defendant’s absence was error, it was harmless because all the evidence in which the court relied on to issue its ruling was adduced at the hearing, a time when the defendant was present.
The defense also contends in this assignment that the evidence introduced by the state, namely the 1981 conviction, failed to comply with the requirements of State v. Richardson, 39,456 (La.App.2d Cir.3/2/05), 896 So.2d 257, which outlines the state’s burden as well as the defen *1122 dant’s burden of proof in a habitual offender proceeding as per State v. Shelton, supra. The defense concedes that the state met its burden in proving the existence of the guilty plea in 1981 and that defendant was represented by counsel. However, the defense argues that the defendant subsequently 114produced affirmative evidence of irregularities, which then required the state to produce a perfect transcript.
The record clearly reflects that the defendant did not argue any irregularities with the taking of his plea nor any infringements of his rights. Rather, the defendant’s argument was regarding the treatment of the 1981 conviction as a felony in Louisiana. According to the defendant, the 1981 conviction was a misdemeanor under Texas law. Thus, he did not understand how it would be considered a felony in Louisiana for purposes of the habitual offender statute. Clearly, the defendant’s argument was not evidence of some irregularity with his 1981 guilty plea. Therefore, this assignment of error is without merit.

Right to a Fair Trial

In the third assignment of error, the defense urges that he was deprived of his right to a fair trial by improper tactics employed by the prosecution. More specifically, the defense contends that the state introduced prohibited evidence, conducted an improper cross-examination in violation of Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and made an improper closing argument.
An error cannot be considered on appeal unless an objection was made at the time of its occurrence. La. C. Cr. P. art. 841(A); State v. Smith, 39,698 (La.App.2d Cir.6/29/05), 907 So.2d 192; State v. Bosley, 29,258 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
11fiHere, the defense argues that it was improper for the state to explicitly ask its expert witness, Sergeant Townley, whether, in his opinion, the defendant was a heroin distributor or user. Although the defense concedes that defendant’s trial counsel failed to object to the state’s questioning, the defense argues that review of this error is permissible pursuant to State v. Williamson, 389 So.2d 1328 (La.1980). In Williamson, the jury was charged with the wrong definitions for the crime. Noting that erroneous jury charges were not errors patent, the Supreme Court reviewed the error, which cast substantial doubt on the fact-finding process, because it involved the definition for the crime for which the defendant was charged. Id. at 1331. Williamson was a limited exception to the rule based on the unique facts of the case.
Unlike the error in Williamson, the alleged error in this case is an evidentiary issue and is not one which cast doubt on the fact-finding process. Aside from the expert testimony, the evidence presented at trial, including the quantity of heroin, the packaging in balloons, and the scales, was more than sufficient for the jury to conclude that the defendant was a distributor of heroin rather than a user. Thus, despite defense’s reliance on Williamson, this alleged error cannot be considered on appeal. La. C. Cr. P. art. 841; Smith, supra; Bosley, supra.
The defense also contends that the state’s cross-examination of the defendant violated Doyle, supra. Particularly, the defense argues that the state improperly questioned the defendant as to his post-arrest silence. On direct examination, the defendant stated that he was wearing latex gloves [Inwhen the police entered his home at 5:20 a.m. because he was mixing roach spray. On cross, the state simply questioned if the defendant told *1123 this to the police, to which the defendant replied “I didn’t have an opportunity to talk to them about anything.” It is unclear from the record if the defendant elected not to speak at all to the police, or if he elected not to speak only after being advised of his Miranda rights. The Constitution does not prohibit use for impeachment purposes of a defendant’s silence pri- or to arrest. Jenkins v. Anderson, 447 U.S. 231, 239, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980).
The defense also complains that the state made reference to the defendant’s post-arrest silence during its closing arguments. However, the record is clear that the defendant’s trial counsel did not object to either alleged error. Despite the contemporaneous objection rule, defense argues that this error is also permissible under Williamson, supra. As determined previously in this assignment, the limited exception of the plain error rule does not apply in this instance either. In State v. Arvie, 505 So.2d 44 (La.1987), the court declined to extend the exception to the contemporaneous objection rule. In Arvie, the prosecutor attempted to use the defendant’s post-arrest silence to suggest that defendant’s testimony at trial was a fabrication. The court found that the prosecutor’s actions did not have nearly the same substantial effect on the reliability of the fact-finding process as in Williamson, supra, when the judge gave jury instructions which erroneously defined the charged crime. Therefore, the exception to the contemporaneous objection rule did not apply-
117The overwhelming evidence adduced at trial was sufficient to convict the defendant of possession with intent to distribute heroin. Therefore, the verdict was surely not attributable to the state’s reference to the defendant’s failure to mention to the police the purpose of the latex gloves when, according to the defendant’s own testimony, he “did not have an opportunity to talk to them about anything.”
Therefore, this assignment of error ' lacks merit.

Probable Cause

In this pro se assignment of error, the defendant urges that the trial court erred by failing to state probable cause for the search warrant. He further claims that the affidavit for the search warrant was not properly authenticated being that a copy was provided and not the original pursuant to Louisiana C.E. 1002.
La. C.E. art. 1002 states:
To prove the content of a writing, recording, or photograph, the original writing, recording or photograph is required, except as otherwise provided by this Code or other legislation.
La. C.E. 1003 provides:
A duplicate is admissible to the same extent as an original unless:
(1) A genuine question is raised as to the authenticity of the original;
(2) In the circumstances it would be unfair to admit the duplicate in lieu of the original; or
(3) The original is a testament offered for probate, a contract on which the claim or defense is based, or is otherwise closely related to a controlling issue.
11sDefendant argues that the search warrant lacked probable cause because the copy of the affidavit, apparently unsigned, was filed rather than the original. The record reveals that at a bench conference, the state produced to defense counsel and the judge, a signed copy of the affidavit. At the beginning of the hearing on the motion to suppress, defense counsel stated he would accept the signed copy in lieu of the original. Not only did defense counsel *1124 accept the copy without objection, but La. C.E. art. 1003 allows a duplicate to be admitted to the same extent as the original. As to the contents of the affidavit, the state produced the affiant, Agent Whitehorn, who testified as to his preparation of the affidavit, the contents of the affidavit and the court’s approval of the affidavit. Any question as to the validity of the affidavit should have been raised during the hearing on the motion to suppress. However, no issue was raised.
This pro se assignment of error lacks merit.

Separation of Documents

In this pro se assignment of error, the defendant alleges that the trial court erred by separated the affidavit from the court order, but he never explains what he means by this. Instead, his brief cites many cases and various unrelated propositions of law, and he repeatedly states that the duplicate of the affidavit to the search warrant should not have been permitted to be filed or relied upon. To that extent, this issue is addressed in Pro Se Assignment of Error Number One. As decided in the previous assignment of error, this argument is meritless.

11flConfidential Informant’s Identity

In this pro se assignment of error, the defendant contends that the trial court erred in withholding the confidential informant’s identity, and this ruling prejudiced his case.
Louisiana has a strong public policy in favor of protecting the identity of confidential informants. State v. Cox, 44,-878 (La.App. 2 Cir. 12/9/09), 26 So.3d 929, writ denied, 09-2829 (La.6/18/10), 38 So.3d 320; State v. Davis, 411 So.2d 434 (La.1982); State v. Hall, 549 So.2d 373 (La.App. 2d Cir.1989). The defendant bears the burden of showing exceptional circumstances which would require divulging a confidential informant’s identity; the trial court has much discretion in deciding whether disclosure is warranted. State v. Oliver, 430 So.2d 650 (La.1983), cert. denied, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983); State v. Babbitt, 363 So.2d 690 (La.1978); State v. Hall, supra.
On July 11, 2006, through discovery, defense counsel requested the name and address of the confidential informant. It appears that the state never responded. According to defendant’s pro se brief, the trial court ruled on March 28, 2007, that the confidential informant’s identity would not be disclosed. On December 20, 2007, at the hearing on the motion to suppress, defendant’s trial counsel requested that the identity of the state’s confidential informant, who provided the information for the search warrant, be divulged. The state, of course, objected to giving the identity of the confidential informant and also stated that it would not use the confidential informant at trial. The judge ruled that the matter would be addressed at a later | ^proceeding. However, it is not apparent from the record that this ruling was ever issued nor does the defendant provide any proof of a ruling in his brief.
In the absence of a ruling, the issue was waived. A defendant waives all pending motions by permitting trial to proceed without raising the issue that his pre-trial motion was neither heard nor ruled on. State v. Fletcher, 02-707 (La.App. 5th Cir.12/30/02), 836 So.2d 557, 559, writ denied, 03-0409 (La.10/10/03), 855 So.2d 334. As such, there is no ruling for this Court to review.
This pro se assignment of error is therefore without merit.
45,158-KM: PRO SE MOTION FOR EXTENSION OF TIME APPEAL
By order of the Louisiana Supreme Court dated December 10, 2010, the merits *1125 of defendant’s pre-lodging motion, No. 45,-158-KM, will be addressed at this time.
On January 30, 2008, the defendant was convicted by a jury of possession of heroin with the intent to distribute. On February 5, 2009, he was sentenced to 20 years imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. He was also ordered to pay a fine of $20,000.00 and court costs. In between defendant’s conviction and sentencing, the state filed a fourth felony habitual offender bill of information on March 28, 2008, and an amended bill on November 13, 2008.
On October 21, 2009, defendant filed a pro se motion styled as an extension of time within which to file an appeal, relying on La. C. Cr. P. art. 915.1. It appears that he was attempting to state reasons why he should be L, granted an extension of time to file an appeal pursuant to La. C. Cr. P. art. 915.1.
La. C. Cr. P. art. 915.1 provides for an extension of a return date once a party has complied with La. C. Cr. P. art. 914 in seeking an order granting an appeal. In this case, the defendant failed to show that he made a motion for an appeal in the trial court. Furthermore, since the defendant has been granted an appeal, and has filed pro se assignments of error, this motion is now moot. Therefore, we deny the defendant’s motion as moot.
ERROR PATENT

Failure to advise of right to remain silent-habitual offender proceeding

Before accepting a defendant’s admission that he is a multiple offender, the trial judge must specifically advise the defendant of his right to a formal hearing, his right to require the state to prove his identity as a multiple offender, and his right to remain silent. La. R.S. 15:529.1(D); State v. Brown, 42,188 (La.App.2d Cir.9/26/07), 966 So.2d 727. A trial court’s failure to properly advise a defendant of his rights under the habitual offender law constitutes patent error on the face of the record and requires that the habitual offender’s adjudication be vacated. State v. Delaney, 42,990 (La.App.2d Cir.2/13/08), 975 So.2d 789, citing State v. Odom, 34,054 (La.App.2d Cir.11/1/00), 772 So.2d 281.
In State v. Mason, 37,486 (La.App.2d Cir.12/10/03), 862 So.2d 1077, this Court stated:
La. R.S. 15:529.1(D)(l)(a) requires that the Defendant be advised of the specific allegations contained in the habitual offender bill of information and his right to a formal hearing at which the State must prove its case. Implicit in this requirement | 22is the additional requirement that the Defendant be advised of his constitutional right to remain silent. Generally, the failure of the trial court to advise the Defendant of his right to a hearing and his right to remain silent is not considered reversible error where the Defendant’s habitual offender status is established by competent evidence offered by the State at a hearing rather than by admission of the Defendant. However, when the guilt of the Defendant is proven by his own stipulation or admission to the habitual offender bill of information without having been informed of his right to a hearing or his right to remain silent, by either the trial court or his attorney, there is reversible error. Citing State v. Bell, 03-217 (La.App. 5 Cir. 5/28/03), 848 So.2d 87,90.
At the habitual offender hearing, the defense argued that the state failed to prove that the defendant was convicted in 1981 in Fort Worth, Texas. The state introduced a fingerprint card showing an arrest date of November 7, 1980 for pos *1126 session of heroin as proof of that conviction. A judgment from the U.S. District Court, Northern District of Texas, Forth Worth Division indicating that a John L. Robinson, represented by counsel, pled guilty to possession of phenmetrazine tablets and cocaine on February 13,1981, was also introduced. Lieutenant McDonnell testified that in his expert opinion, the fingerprint card for that 1980 arrest contained the same prints for the defendant. However, the record reveals that the judgment of conviction dated February 13, 1981, had no identifying marks to correlate it with the November 7, 1980, arrest for possession of heroin. Therefore, at the habitual offender hearing, the defendant decided to interject to clear up the confusion. The defendant admitted that he was arrested for possession of heroin at the Fort Worth, Texas airport. However, once the substance was tested, the test proved it was not heroin. In defendant’s words, he “copped to a lesser charge | ¾¾⅛ order to get out of jail,” which indicated that he pled to something other than possession of heroin, thereby confirming that he was convicted in 1981.
The record reveals that when the defendant elected to speak about the 1981 conviction, he was not advised of his right to remain silent. However, at some time later in the hearing, the court advised the following:
THE COURT: Mr. Robinson, I mean, you know, this could be used against you, however, do you understand that?
DEFENDANT: I understand that.
At the time the court made this statement, the damage had already been done. Even though the defendant had acknowledged his identity as to the 1981 conviction, the state did not adequately prove the defendant’s habitual offender status with its evidence. Neither the transcripts nor the minutes reflect that the defendant was previously advised of his right to remain silent during the habitual offender proceeding, nor did the court’s statement advise the defendant that he had a right to remain silent.
As stated in Mason, supra, this failure to advise the defendant of his right to remain silent could be harmless error, provided the state offered competent evidence. However, the evidence offered by the state did not sufficiently prove that the defendant was the person convicted on February 13, 1981, for possession of phen-metrazine tablets and cocaine. The state only offered expert testimony that the fingerprints on the card for an arrest on November 7, 1980, were that of the defendant, but offered no evidence to connect that arrest for possession of heroin to the conviction in 1981. It was only by defendant’s admission that the court was able to determine that the ^defendant was the same person arrested in 1980 for possession of heroin who later pled guilty to possession of phenmetrazine tablets and cocaine in 1981.
Accordingly, the trial court’s failure to properly advise the defendant of his right to remain silent prior to the acknowledgment of his guilt constitutes error patent on the face of the record. Because the state failed to establish defendant’s guilt by competent evidence, this is reversible error. Thus, the defendant’s habitual offender adjudication and enhanced sentence must be vacated, and the matter remanded for a new habitual offender proceeding.
Additionally, the trial court failed to vacate the defendant’s original sentence when it imposed the enhanced sentence on March 8, 2010. We advise the trial court to vacate defendant’s original sentence pri- or to imposing any enhanced sentence following the new habitual offender proceeding.
*1127 CONCLUSION
For the foregoing reasons, we affirm defendant’s conviction, vacate the adjudication and enhanced sentence as a habitual offender, and remand the matter for a new habitual offender proceeding. Also, the defendant’s pro se motion, No. 45,158-KM, is denied as moot.
CONVICTION AFFIRMED; SENTENCE VACATED, MOTION DENIED.