WILLIAMS, J.
I, The defendant, Max Evans, was charged by bill of information with Driving While Intoxicated (“DWI”), third offense, a violation of LSA-R.S. 14:98(D). Following a jury trial, defendant was found guilty as charged and was sentenced to serve five years at hard labor, with three years suspended, and five years of supervised probation upon release from prison. We affirm the defendant’s conviction and the portion of the sentence which imposed a sentence of five years at hard labor, with three years suspended. We amend the defendant’s sentence to reflect that his term of probation is three years, and we affirm this sentence as amended.
*409 FACTS
On December 31, 2010, at approximately 4:45 p.m., the defendant was driving south on Louisiana Highway 9, in a single-cab Chevrolet pickup truck. Louisiana State Trooper Brandon Salmon, who was traveling north on the same highway, passed the defendant and observed that he. was not wearing a seat b.elt. The officer executed a U-turn and conducted a traffic stop. Trooper Salmon exited his police vehicle and approached the defendant. The officer explained the traffic violation, asked for the defendant’s driver’s license, vehicle registration and proof of automobile insurance; he also asked where the defendant had been and his destination. Trooper Salmon stated he did not notice any impairment in the defendant’s driving prior to pulling him over for the seat belt violation.
According to Trooper Salmon, when he approached the defendant he observed that the defendant’s eyes appeared glassy and bloodshot; he also detected an odor of alcohol on the defendant’s breath. He walked with the 12defendant to the passenger side of the truck to retrieve the vehicle registration and insurance documents. When, the defendant opened the door of the vehicle, Trooper Salmon observed what appeared to be a spilled alcoholic beverage on the floorboard. By that time, the officer was closer to the defendant and detected a more noticeable smell of alcohol on the defendant’s breath. Trooper Salmon asked the defendant if he had consumed any alcoholic beverages that day; the defendant replied that he had drunk some Budweiser beer earlier that day. As the officer called headquarters for the defendant’s driving record, he observed the defendant stabilizing and steadying himself on the police vehicle. Trooper Salmon stated that although the defendant’s balance seemed normal, he slightly swayed at times.
Trooper Salmon decided to administer the field sobriety tests. During the horizontal gaze nystagmus test, the officer noted that the defendant’s eyes tracked equally, but not smoothly, and he observed a deviation in both of the defendant’s eyes. According to Officer Salmon, these clues indicated that the defendant was impaired. The officer observed that defendant also swayed slightly during these tests. Additionally, during the walk-and-turn test, Trooper Salmon observed that the defendant started too soon, forgot the instructions and moved at a much slower pace than what the trooper considered normal. During another test, in which the defendant had to stand on one leg, the officer observed that the defendant swayed and put his foot down. Trooper Salmon testified that these responses indicated that the ^defendant was impaired.[1]
Trooper Salmon placed the defendant under arrest and transported him to the Homer police station. On arrival, he advised the defendant of his Miranda rights and his rights regarding the Intoxilyzer 5000 breathalyzer test. The' defendant consented to the test, which revealed that his blood-alcohol content was .140 grams; the legal limit is .08 grams.
During a booking interview, the defendant informed the officers that he was a non-insulin dependent diabetic and that he took medication for high blood pressure. He also stated that he had consumed four beers that morning.
During the trial, Kerry Johnson, an instructor and technician in blood-alcohol concentration testing, was accepted as an expert in the operation and maintenance of *410 the Intoxilyzer 5000 machine. He testified with regard to the maintenance of the machine and described how the machine works to analyze the amount of alcohol in a person’s blood during the test.
Jared Mclver was accepted as an expert in field sobriety testing, blood-alcohol testing on the Intoxilyzer 5000 and the detection of intoxication. Mclver testified that he had reviewed the defendant’s arrest report and the footage from the dash camera; he opined that Trooper Salmon correctly conducted the field sobriety tests. Mclver also opined that the defendant was impaired. Mclver stated the camera footage showed that the defendant used his hand to prop himself up, that he used his arm to balance himself, and that he was swaying. Mclver concluded that the defendant’s 14breath test results exceeded the legal limit by “quite a bit.”
The defendant testified that he had awakened at approximately 9:80 a.m. on the day in question and began drinking shortly thereafter. At approximately 10:00 a.m., he went back to sleep until 3:30 or 4:00 p.m. He stated that he then got into his car and drove to a grocery store to meet a friend, Louise Jones. While there, he encountered his girlfriend, Dorothy Ann Tucker, in the parking lot. The defendant testified that after speaking to Ms. Tucker, he met Ms. Jones in the parking lot and gave her money to bake a cake for him. Thereafter, he returned home, exited his car and got into his truck to drive to Ms. Jones’ house to pick up some food.
The defendant also testified that following his 2008 conviction for DWI, he had installed an ignition interlock device in his car pursuant to the court’s order. He admitted that he had owned the truck since 2009 but had not installed such a device in that vehicle. The defendant testified that he decided to drive his truck, rather than his car, on the day in question because he was going to Ms. Jones’ house and she had bushes along her driveway that would scratch his car.
Additionally, the defendant testified that he takes medication for high blood pressure and lower back pain and Vistaril for anxiety. He stated the back pain affects his left leg but admitted that he did not inform Trooper Salmon of this prior to taking the field sobriety tests. The defendant also admitted that he drank “a couple” of beers that morning and that he had not eaten anything that day. He denied Trooper Salmon’s testimony that his breath smelled of alcohol, that his eyes were red and glassy, and that he had 15spilled an alcoholic beverage in his vehicle.
The defendant also attempted to explain his failure in the field sobriety tests. He testified that he asked the officer to repeat the test instructions because the road noise made it difficult to hear. He also stated that he put his foot down to switch legs in the one-leg test because of his lower back pain, which makes his leg less stable.
Dorothy Ann Tucker testified that she and the defendant had been in a romantic relationship since 2006. She' stated she had been a passenger in the defendant’s car and had seen him blow into the ignition interlock device to start the vehicle. Ms. Tucker also testified that on the day in question, she saw defendant in the store parking lot next to his car and she did not smell any alcohol on his breath. She further stated that she knew defendant drove his truck to go fishing and that he liked to drink Miller Lite beer.
Louise Jones testified that she sometimes visited the defendant’s house to play dominoes and she knew that he drank gin. She also testified that she met the defendant on the day in question to get money to bake a cake for him; she saw that he *411 was driving his car. Ms. Jones stated she could not tell if he had been drinking unless she saw him drinking.
The parties entered into a stipulation with regard to the defendant’s two prior DWI convictions (April 2007 and April 2008); the state entered proof of those convictions into evidence.[2] After trial, the jury found the defendant guilty of DWI, third offense. Subsequently, the trial court denied the defendant’s motion for post-verdict judgment of acquittal.
| fiDuring the sentencing hearing, the trial court reviewed the sentencing guidelines set forth in LSA-C.Cr.P. art. 894.1. The court considered' the defendant’s three convictions for DWI and noted that the convictions were all “fairly close together.” The court also considered the defendant’s testimony that he had started drinking just after 9:00 a.m. on the day in question and found that he had a “substance abuse problem.” The court sentenced the defendant to serve five years in prison, with three years suspended, five years of supervised probation upon release, and credit for time served. The defendant appeals his conviction.
DISCUSSION
The defendant contends the trial court erred in denying his motion to suppress.He argues that the police officer impermis-sibly searched and inspected his person pursuant to a traffic stop for a seat belt violation.
The state bears the burden of proof when a defendant files a motion to suppress evidence obtained without a warrant. LSA-C.Cr.P. art. 703(D). The entire record is reviewable for determining the correctness of a ruling on a motion to suppress. State v. Pena, 43,321 (La. App.2d Cir 7/30/08), 988 So.2d 841; State v. Young, 39,546 . (La.App.2d Cir.3/2/05), 895 So.2d 753. A trial court’s denial of a motion to suppress is afforded great weight and will not be set aside unless a preponderance of the evidence clearly favors suppression. State v. Pena, supra; State v. White, 39,681 (La.App.2d Cir.5/11/05), 903 So.2d 580.
The authority and limits of the Fourth Amendment apply to investigative stops of vehicles. United States v. Sharpe, 470 U.S. 675, 105 7S.Ct. 1568, 84 L.Ed.2d 605 (1985); United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). The stopping of a vehicle and the detention of its occupants is a seizure within the meaning of the Fourth Amendment. State v. Pena, supra, citing United States v. Shabazz, 993 F.2d 431 (5th Cir.1993). The standard for evaluating a challenge-to a routine warrantless stop • for violating traffic laws is the two-step formulation articulated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Pena, supra; State v. Sims, 40,300 (La. App.2d Cir.10/26/05), 914 So.2d 594. The court must determine “whether the officer’s action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.” U.S. v. Shabazz, 993 F.2d at 435, quoting Terry v. Ohio, 392 U.S. at 20, 88 S.Ct. 1868.
 For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred or is about to occur, before stopping the vehicle. United States v. Sharpe, supra; State v. Pena, supra; State v. Sims, supra. When an officer observes what he objectively believes is a *412 traffic offense, the decision to stop the vehicle is reasonable. Whren v. United, States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); State v. Waters, 2000-0356 (La.3/12/01), 780 So.2d 1053; State v. Triplet, 42,357 (La.App.2d Cir.8/15/07), 962 So.2d 506, writ denied, 2007-2030 (La.2/15/08), 976 So.2d 175.
 A driver’s failure to wear a seat belt constitutes reasonable cause for |Ran investigatory traffic stop. State v. Hunt, 2009-1589 (La.12/1/09), 25 So.3d 746; State v. Gomez, 2006-417 (La.App. 5th Cir. 11/28/06), 947 So.2d 81. An officer making a traffic stop may order the driver (as well as passengers) out of a vehicle pending completion of the stop. Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997); State v. Cure, 2011-2238 (La.7/2/12), 93 So.3d 1268, cert. denied, - U.S: -, 133 S.Ct. 549, 184 L.Ed.2d 357 (2012); State v. O’Neal, 44,-067 (La.App.2d Cir.4/18/09), 7 So.3d 182, writ denied, 2009-1243 (La.2/12/10), 27 So.3d 841.
LSA-R.S. 32:295.1 provides, in pertinent part:
A. (Í) Each driver of a passenger car, van, sports utility vehicle, or truck having á gross weight of ten thousand pounds or less, commonly referred to as a pickup truck, in this state shall have a safety belt properly fastened about his or her body at all times when the vehicle is in forward motion. The provisions of this Section shall not apply to those cars, vans, sports utility vehicles, or pickups manufactured prior to January 1, 1981.
[[Image here]]
F. Probable cause for violation of this Section shall be based solely upon a law enforcement officer’s clear and unobstructed view of a person not restrained as required by this Section. A law enforcement officer may not search or inspect a motor vehicle, its contents, the driver, or a passenger solely because of a violation of this Section.
In the instant case, the defendant does not argue that the initial stop was invalid. Rather, he argues that the search of his person, i.e., his breath, was invalid because LSA-R.S. 32:295.1(F) states, in part, “A law enforcement officer may not search or inspect a motor vehicle, its contents, the driver, or a passenger solely because of a violation of this Section.” According to the defendant, at the inception of the traffic stop, Trooper Salmon did not have any reason to suspect that he was impaired. Thus, the ^officer violated his rights by conducting the field sobriety tests.
In State v. Benoit, 2001-2712 (La.5/14/02), 817 So.2d 11, the defendant was stopped after he was observed driving without wearing a seat belt. The police officer instructed the defendant to exit the vehicle and walk toward the police vehicle. The officer observed that upon exiting the vehicle, the defendant was unsteady on his feet and that he used his truck for balance. During their conversation, the officer observed that the defendant’s speech was slurred and that his breath smelled of alcohol. The officer performed a field sobriety test, which the defendant failed. The defendant refused to submit to a breathalyzer test and was arrested for DWI. The trial court denied the defendant’s. motion to suppress; the court of appeal reversed. The Supreme Court granted the state’s writ application and reversed the court of appeal’s decision. In discussing LSA-R.S. 32:295.1(F), the Court stated:
[W]e must determine whether [the officer’s] actions subsequent to the stop were unlawful. Pertinent to this determination is whether [the officer’s] actions of ordering the defendant out of the car, then observing the defendant’s *413 gait, his speech, and detecting the scent of his exhalations, constitutes a search or inspection. Under current Fourth Amendment jurisprudence, [the officer’s] conduct clearly does not constitute a search. (‘The term [search] implies some exploratory investigation, or an invasion and quest, a looking for or seeking out.’) Accordingly, the propriety under Rev. Stat. 32:295.1 of [the officer’s] order and subsequent observation of the defendant hinges upon the question of whether such behavior constitutes an inspection, and thus depends upon the ‘generally prevailing meaning1 of inspection.
Black’s Law Dictionary defines the word ‘inspection’ as:
|10To examine; scrutinize; investigate; look into; check over; or view for the purpose of ascertaining the quality, authenticity or conditions of an item, product, document, residence, business, etc. Word has broader meaning than just looking, and means to examine carefully or critically, investigate and test officially, especially a critical investigation or scrutiny.
[[Image here]]
[Considering [the officer’s] experience in law enforcement and track record for identifying and making DWI arrests, which is not contested, the facts herein present a valid reason for [the officer] to become suspicious and pursue an investigation of defendant’s intoxicated state. [The officer] saw the defendant struggle for balance as he exited his vehicle, and he slurred his speech, and smelled of alcohol. At this point, [the officer] had no need to investigate the seat belt violation further; rather, he had independent, reasonable suspicion that the defendant was intoxicated and thus was authorized to conduct field sobriety tests, breather analyzer tests, and similar indices of intoxication upon the defendant. The violation of La.Rev.Stat. 32:295.1 was therefore not the ‘sole’ reason for [the officer’s] administration of field sobriety tests and his request that the defendant submit to a breath analyzer test. Accordingly, [the officer’s] behavior did not conflict with the statute at issue.
State v. Benoit, supra, at 13-15 (internal citations omitted).
In the instant case, we have reviewed this record in its entirety. Our review concludes the following:
Trooper Salmon testified that he detected the odor of alcohol on the defendant’s breath as the defendant gave him his driver’s license. He also testified that the defendant’s eyes appeared bloodshot and “glassy.” He stated that he followed the defendant to the passenger side of his truck and observed what appeared to be an open container of alcohol spilled on the floorboard of the vehicle. By this time, Trooper Salmon was standing closer |1Tto the defendant and was able to detect a stronger odor of alcohol.
Additionally, Trooper Salmon unequivocally testified that he had a great deal of experience conducting traffic stops and making DWI arrests. He testified that he had been a Louisiana State Trooper for over five years; before becoming a state trooper, he had been a Bossier City police officer for nearly five years; prior to that, he was a member of the Homer Police Department for approximately one year. Trooper Salmon also stated that he had received training in conducting field sobriety tests and in administering Intoxilyzer tests. The officer testified that he made approximately two arrests per month for alcohol-related offenses, and during his five-year tenure with the Louisiana State Police Department, he had made more *414 than 100 DWI arrests. Further, he testified that during his employment as a police officer and in his private life, he had been around intoxicated individuals on many occasions. Therefore, he was able to tell whether a person was under the influence of alcohol by observing their eyes, gait, speech and coordination.
We must note that the DVD of the traffic stop does not reveal any obvious signs that the defendant was impaired. At one point during the stop, the defendant put one hand on his truck and the other on the police car, seemingly to steady himself. However, the defendant was able to maintain his balance without swaying or falling over. Nevertheless, there is no evidence in the record to contradict the officer’s testimony with regard to what he observed and smelled.
We find that the smell of alcohol on the defendant’s breath combined |12with his bloodshot eyes constituted reasonable suspicion that the defendant was intoxicated. Therefore, based on this suspicion, Trooper Salmon was authorized to conduct the field sobriety tests, which the defendant failed. The officer’s suspicion that the defendant was impaired was also confirmed by the results of the Intoxilyzer test, which showed his blood-alcohol content was .140 grams.
The defendant also contends the trial court erred in denying his motion to suppress statements he made to Trooper Salmon. He argues that the officer violated his rights by asking him if he had been drinking without advising him of his Miranda rights.[3]
A traffic stop does not constitute a custodial interrogation; therefore, a defendant’s statements to the police officer during the traffic stop do not trigger the Miranda requirement. State v. Lara, 46,-639 (La.App.2d Cir.11/2/11), 78 So.3d 159; State v. Dufrene, 2012-716 (La.App.5th Cir.4/10/13), 115 So.3d 22. Answers to non-custodial questioning at the scene “are admissible without Miranda warnings.” State v. Shirley, 2008-2106 (La.5/5/09), 10 So.3d 224.
A Miranda warning is not required for general questioning during a fact-finding process until the investigation ceases to be exploratory in nature, or the person has been taken into custody or otherwise significantly deprived of his freedom. State v. Cooper, 45,568 (La.App.2d Cir.12/8/10), 55 So.3d 873. Our state supreme court “has consistently held that Miranda warnings are not required when the law officer is making a general, 113on-the-scene investigation to determine whether there has been the commission of a crime, and, if so, by whom.” State v. Thornton, 2012-0095 (La.3/30/12), 83 So.3d 1024.
The defendant herein was stopped for a traffic violation. He was not in custody when Trooper Salmon, suspicious that the defendant was impaired, asked whether defendant had been drinking. There was no custodial interrogation. Rather, the officer made an inquiry as he investigated his suspicion that the defendant was driving while intoxicated. The Miranda requirement was not triggered at that point and the defendant’s admission — that he had been drinking beer earlier that day — was admissible. Accordingly, the trial court did not err in denying the defendant’s motion to suppress the statement.
ERRORS PATENT
In accordance with LSA-C.Cr.P. art. 920, all appeals are reviewed for errors *415 patent on the face of the record. A review of the record herein reveals three errors patent: (1) the failure to impose the mandatory $2,000 fine; (2) the failure to order that 45 days of the sentence be served without benefit of probation, parole, or suspension of sentence; and (3) the imposition of five years’ supervised probation.
LSA-R.S. 14:98(D)(1)(a), as written in 2010, provided:
On a conviction of a third offense, notwithstanding any other provision of law to the contrary and regardless of whether the offense occurred before or after an earlier conviction, the offender shall be imprisoned with or without hard labor for not less than one year nor more than five years and shall be fined two thousand dollars. Forty-five days of the sentence of imprisonment shall be 114imposed without benefit of probation, parole, or suspension of sentence. The court, in its discretion, may suspend all or any part of the remainder of the sentence of imprisonment. If any portion of the sentence is suspended, the offender shall be placed on supervised probation with the Department of Public Safety and Corrections, division of probation and parole, for a period of time equal to the remainder of the sentence of imprisonment, which probation shall commence on the day after the offender’s release from custody.
The trial court’s failure to state that 45 days of the sentence shall be served without benefits will be corrected automatically by operation of LSA-R.S. 15:301.1. See State v. Braziel, 42,668 (La.App.2d Cir.10/24/07), 968 So.2d 853; State v. Klasek, 37,114 (La.App.2d Cir.4/11/03), 843 So.2d 646, unit denied, 2003-1359 (La.12/12/03), 860 So.2d 1149. Moreover, although we note that the trial court imposed an illegally lenient sentence by failing to assess the mandatory fine, we decline to impose the fine. The state has not objected to the error and defendant is not prejudiced in any way by the failure to impose the mandatory fine. Thus, considering the defendant’s apparent indigent status,[4] we decline to remand the case for correction of the sentence to include such a fine. See State v. Jones, 42,531 (La.App.2d Cir.11/7/07), 968 So.2d 1247.
Additionally, the trial court ordered the defendant to serve five years of supervised probation upon his release from prison. However, the minutes reflect a sentence of three years of supervised probation upon the defendant’s release from prison. Pursuant to LSA-R.S. 14:98(D)(1)(a), the correct period of supervised probation is three years, the “period of time | ^equal to the remainder of the sentence of imprisonment,” as correctly reflected in the minutes.
An appellate court is authorized to correct an illegal sentence pursuant to LSA-C.Cr.P. art. 882(A), when the sentence does not involve the exercise of sentencing discretion by the trial court. See State v. Haynes, 2004-1893 (La.12/10/04), 889 So.2d 224. The correction of this error does not involve sentencing discretion, as the defendant’s term of probation is mandatory based upon the term of his suspended sentence. Therefore, we amend the defendant’s sentence to reflect that his term of probation is three years, and we affirm this sentence as amended.
CONCLUSION
For the foregoing reasons, we affirm the defendant’s conviction and that portion of the sentence which imposed a sentence of *416 five years at hard labor, with three years suspended. We amend the defendant’s sentence to reflect that his term of probation is three years, and we affirm this sentence as amended.
CONVICTION AFFIRMED; SENTENCE AMENDED; SENTENCE AFFIRMED AS AMENDED.

. The traffic stop and. the interactions between Trooper Salmon and the defendant were captured by the officer’s dashboard camera.

. The evidence included bills of information with fingerprints, minutes, transcripts and a judgment of conviction (for the first conviction).

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The record reveals that the defendant was represented at trial by an indigent defender. On appeal, he is represented by the Louisiana Appellate Project.