# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 10, 2022

Lyle W. Cayce
Clerk

No. 21-30360

Francis G. "Buddy" Allemang,

*Plaintiff—Appellant*,

*versus*

State of Louisiana through the Department of Public Safety (Louisiana Office of State Police, Troop D); Freddie Rogers,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:19-CV-128

---

Before Higginbotham, Dennis, and Graves, *Circuit Judges*.

James E. Graves, Jr., *Circuit Judge*:*

Plaintiff-appellant Francis G. "Buddy" Allemang sued a Louisiana State Trooper and the State of Louisiana after he was arrested on suspicion of driving while intoxicated for failing a standard field sobriety test (SFST),

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-30360

even though Allemang had informed the Trooper that back injuries would inhibit his ability to complete the SFST, and even though Allemang would later blow a clean Breathalyzer. The district court granted summary judgment to the defendants, holding that the arrest did not violate Allemang's rights under the Fourth and Fourteenth Amendments. We AFFIRM, but for slightly different reasons than the district court offered.

I.

In August 2015, plaintiff-appellant Francis G. "Buddy" Allemang was fifty-five years old and had recently suffered spinal injuries. Allemang had received medical treatment, including injections and various neck and back surgeries, for the pain associated with these injuries. He would be deemed disabled by a Social Security physician two years later in 2017. But on August 21, 2015, he was stopped at a DWI checkpoint at 11 p.m. in Calcasieu Parish, Louisiana. Allemang was driving three passengers toward an RV park where they were all staying that evening.

When Allemang approached the checkpoint, an unknown officer asked him whether he had consumed any alcohol that day, to which Allemang responded that he had four beers over a several-hour period, with the final beer "around 9:30" with dinner. The officer then motioned for defendant-appellee State Trooper Freddie Rogers to approach Allemang's vehicle. Allemang repeated to Rogers that he had consumed four beers that evening, and Rogers would later assert in his incident report that he detected a "faint to moderate odor of alcoholic beverage on [Allemang's] breath." Rogers asked Allemang to submit to a SFST. Allemang consented and exited his vehicle.

Before starting the SFST, Rogers asked Allemang whether there was any reason he could not perform the tests. Allemang said "yes" and explained his recent spinal injuries and surgeries, which he believed would

impede his ability to complete the test's physical portions. One of Allemang's passengers echoed Allemang's concerns to the officers, including that Allemang's amblyopia could interfere with a nystagmus test. Rogers proceeded with the full SFST.

Rogers placed Allemang in front of his squad car and performed a horizontal nystagmus test followed by a one-leg stand test, a "heel-to-toe" test, and an "alphabet" test. Rogers last instructed Allemang to count backwards from 100. According to Rogers, Allemang had a "lack of smooth pursuit in both eyes during the nystagmus test," and did not pass the various movement tests. Specifically, Rogers says that Allemang stopped once, stepped off the line once, and missed heel-toe contact five times during the walk-and-turn test. Rogers also says that Allemang was unable to stand on one leg for more than a few seconds. Rogers arrested Allemang for driving while intoxicated.

Rogers took Allemang to a nearby "Intoxilyzer Trailer" for a breath test. Rogers asked Allemang if he would submit to a Breathalyzer test, to which Allemang responded that he could not refuse the test because he would lose his commercial driving license for at least a year. Rogers retorted that Allemang would lose his license for a year anyway because he had just been arrested for a DUI. Allemang submitted to the Breathalyzer test, and blew a .000% blood-alcohol level. Still believing that Allemang was intoxicated, Rogers asked whether Allemang had taken any medication that evening. Allemang answered that he had taken Aleve for back pain, Metformin for diabetes, and blood pressure medication. Despite the negative Breathalyzer test, Rogers took Allemang to Louisiana State Police Troop D headquarters to collect a urine sample and then sent him to Calcasieu Parish jail for booking. A few days later, Allemang's urinalysis results reported no intoxicating drugs in his system when he was arrested. On February 1, 2016, the Calcasieu Parish District Attorney rejected Allemang's DWI charge.

Allemang filed an administrative complaint with the Louisiana State Police, alleging that he had been improperly arrested. An internal investigation showed that Rogers' dashboard camera did not capture the sobriety tests due to condensation on Rogers' windshield. Rogers' body camera also did not record any audio of the tests or arrest, although Rogers would later state that his camera was functioning properly and did not know "why the audio did not record." The State closed Allemang's complaint, concluding that that Allemang's allegations were "unfounded."

Allemang then filed this suit against Rogers and the "State of Louisiana Through the Department of Public Safety" in August 2016. He alleged that Rogers violated his due process and privacy rights under the Louisiana Constitution, as well as "other rights provided by Louisiana law and the United States Constitution." He later filed a supplemental petition alleging that Rogers is individually liable, as well as more clearly asserting wrongful arrest in violation of his Fourth and Fourteenth Amendment rights. The defendants then removed the case to the Western District of Louisiana.

Rogers asserted qualified immunity in his answer to Allemang's complaint, but the State's private counsel did not assert Eleventh Amendment immunity or argue that the State could not be sued under 42 U.S.C. § 1983. The defendants then moved to dismiss under rule 12(b)(6). After Rogers' deposition, the parties asked the district court to convert that motion to one for summary judgment.

On a magistrate judge's recommendation and over Allemang's objections, the district court entered summary judgment on: (i) Allemang's individual-capacity claim against Rogers, finding that Rogers was entitled to qualified immunity; (ii) Allemang's vicarious liability claims; and (iii) Allemang's defamation claim. Allemang sought to appeal immediately,

but we dismissed the appeal for lack of jurisdiction given that Allemang's official-capacity claim and several state tort claims remained pending.

Some evidentiary wrangling followed the defendants' second motion for summary judgment on Allemang's remaining claims, with Allemang seeking to either depose more troopers or to admit affidavits from two retired State Police supervisors. The district court struck those affidavits for, among other reasons, lack of relevancy. The district court then granted the defendants' second summary judgment motion and dismissed Allemang's remaining claims with prejudice. This appeal followed. We have jurisdiction over this appeal from a final judgment under 28 U.S.C. § 1291.

## II.

Allemang presents three overarching issues for our review. First, he asserts that the district court wrongly concluded that Rogers had reasonable suspicion to conduct the SFST or probable cause to arrest Allemang. Second, he says that the district court erred in dismissing his "*Monell* and Louisiana negligent training/supervision liability claims." Third, he argues that the district court erred in striking the affidavits from the retired State Troopers.

## A.

We start with the most crucial question: whether Rogers violated Allemang's constitutional rights by subjecting him to a SFST and then by arresting him despite Allemang's explanation for his deficient SFST performance and clean Breathalyzer. The constitutional tort of false arrest requires a showing of no probable cause. *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001). "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th

Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). The facts must be known to the officer at the time of the arrest; post-hoc justifications based on facts later learned cannot post-rationalize an arrest. *Sibron v. New York*, 392 U.S. 40, 62-63 (1968). The facts also must be particularized to the arrestee. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). "We apply an objective standard, which means that we will find that probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-54 (2004)).

Allemang was arrested for driving while intoxicated. Under Louisiana law, one is guilty of this offense if he or she operates any motor vehicle while "under the influence of alcoholic beverages" or "one or more drugs," even if those drugs are not controlled substances. La. Stat. Ann. § 14:98(A). That is, Allemang need not specifically have been under the influence of alcohol to violate the statute; impairment by prescription or over-the-counter drugs would also suffice.

Allemang alleges two instances in which Rogers acted without the requisite suspicion. First, he argues that Rogers lacked reasonable suspicion to administer the SFST. Second, he argues that Rogers lacked probable cause to arrest him based on his deficient SFST performance given Rogers' knowledge of Allemang's health conditions and Allemang's clean Breathalyzer. We hold that Allemang has not carried his burden of demonstrating a violation of a clearly established right, and therefore Rogers is entitled to qualified immunity.

1.

Rogers did not observe any deficiency in Allemang's driving. Rogers was brought to Allemang's car after Allemang told another officer that he

(Allemang) had consumed four beers that day, the first beer around noon, and the last beer with his evening meal, around 9:30 p.m., about an hour and half earlier. Allemang's admission was enough to justify administering the SFST, as Louisiana courts have consistently held. *Cf. State v. Evans*, 48,489 (La. App. 2 Cir. 12/4/13), 130 So. 3d 406, 410 (defendant admitted that he drank two beers); *State v. Shoemaker*, 569 So. 2d 169, 171 (La. Ct. App. 1990), *writ denied*, 572 So. 2d 73 (La. 1991) (defendant admitted drinking four alcoholic beverages). Thus, Rogers had reasonable suspicion to ask Allemang to submit to a SFST.

2.

Whether Rogers had probable cause to arrest Allemang after the SFST, however, presents a much closer question. We conclude that the law does not conclusively establish probable cause on this question. But that uncertainty necessarily means that Rogers is entitled to qualified immunity, because there is no caselaw clearly establishing that Rogers acted unreasonably in arresting Allemang. *See Parker v. Blackwell*, 23 F.4th 517, 522 (5th Cir. 2022) ("Showing that a right is clearly established 'is difficult,' and this showing is made only when 'it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" (quoting *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020)).

When Rogers asked Allemang whether he was able to perform a field sobriety test, Rogers responded that his bad back would prevent him from doing so, and that his amblyopia might interfere with a nystagmus test. Nonetheless, Rogers proceeded with the SFST, including a nystagmus test, and then arrested Rogers based on Allemang's poor performance. Allemang does not dispute that he was deficient on his SFST. Thus, the undisputed evidence shows Rogers based his arrest on the following information:

- Allemang admitted to drinking four beers;

- Rogers' conclusion that Allemang failed the SFST (based on Rogers' inability to perform the nystagmus test, inability to stand on one foot, and inability to perform the walk-the-line test); and
- A "faint to moderate" smell of alcohol on Allemang's breath.

On the ledger's other side, however, we have Allemang's statement that his disabilities would inhibit his ability to perform the SFST and his subsequent negative Breathalyzer. Allemang does not dispute that he was deficient on his SFST. But he contends that any probable cause arising from the SFST dissipated when he blew a negative Breathalyzer. The parties cite no circuit-level authority that addresses whether a clean Breathalyzer test negates probable cause for an arrest based on a failed SFST. Nor does there appear to be consensus among the district courts on the issue. *See Butler v. City of Richardson*, No. 3:95-CV-0533, 1997 WL 135651, at *3 (N.D. Tex. Mar. 14, 1997) (two negative Breathalyzer tests dispelled probable cause); *Jason v. Par. of Plaquemines*, No. CV 16-2728, 2016 WL 4623050, at *3–4 (E.D. La. Sept. 6, 2016) (0.022% Breathalyzer result did not negate probable cause created by admission of drinking, failed SFST, and smell of alcohol); *Martinez v. Greater New Orleans Expressway Comm'n*, No. CV 20-3101, 2021 WL 1023054, at *4–5 (E.D. La. Mar. 17, 2021) (negative Breathalyzer test did not dispel probable cause because test was administered long after officer's observations of signs of intoxication such that alcohol would have metabolized). Also lacking is any consensus or robust trend among the other circuits that we could join. *See Miller v. Sanilac Cty.*, 606 F.3d 240, 249 (6th Cir. 2010) (negative Breathalyzer result creates fact issue as to reasonableness of arrest precluding summary judgment); *Barnett v. MacArthur*, 715 F. App'x 894, 907 (11th Cir. 2017) (negative Breathalyzer test and disputed SFST results negated probable cause); *but see Perdew v.*

*Valiant*, 21 F. App'x 703, 705 (9th Cir. 2001) (failed SFST supported probable cause despite negative Breathalyzer).

Against this mixed precedential backdrop, we must conclude that Rogers acted did not act unreasonably in light of then-prevailing caselaw. Accordingly, the district court did not err in finding that Rogers is entitled to qualified immunity against Allemang's Fourth Amendment claim.

B.

Allemang also appeals the district court's dismissal of his claims against Rogers in his "official capacity." The district court and both parties analyze this claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978**).** Allemang similarly avers in his briefing that the "crux" of his "[§] 1983 *Monell* claim (and corresponding Louisiana claim) against the State sounds in its failure to sufficiently train its officers on the proper administration of SFSTs, especially insofar as it relates to disabled individuals."

According to Allemang, his claim against Rogers in his official capacity is a claim against the "State." This is a correct description of official-capacity claims. *See, e.g.*, *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989) ("A suit against a state official in his . . . official capacity is not a suit against the official but rather is a suit against the official's office," and thus is "no different from a suit against the State itself."). The defendants did not assert Eleventh Amendment immunity as a defense to this allegation, and, like the district court, they analyze this claim under *Monell*. However, a claim for damages against a state official in his official capacity or a state entity for an alleged unconstitutional policy or custom is barred by both Eleventh Amendment immunity and the rule that states are not "persons" under § 1983. *See, e.g.*, *Will*, 491 U.S. at 66; *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). The Louisiana State Police Department is a sub-unit of the Louisiana

Department of Public Safety, an independent executive agency of the state government, and thus is not a cognizable *Monell* defendant. *See* LA. REV. STAT. § 36:401, *et seq.* Curiously, no party briefed these limitations during this litigation, and the district court did not note them when it rejected Allemang's official capacity claim for other reasons. Though the defendants may have waived Eleventh Amendment immunity by not raising it, *see Edelman*, 415 U.S. at 678, § 1983—as interpreted by the Supreme Court—does not allow for suits against state entities or against state officials in their official capacities, *Will*, 491 U.S. at 65-66. Accordingly, the district court was correct, albeit for the wrong reasons, in dismissing Allemang's § 1983 claims against the State of Louisiana.

## C.

Last, Allemang challenges the district court's decision to strike the affidavits from retired Troopers Edgar and Reavis. But because Allemang offered those affidavits in support of his barred official-capacity claim, we need not address the district court's evidentiary ruling.

## IV.

In summary, we agree with the district court that Rogers is entitled to qualified immunity, but only because there is no caselaw clearly establishing that he acted unreasonably in proceeding to arrest Allemang for a failed SFST despite a negative breathalyzer. We further conclude that Allemang's official-capacity claim against Rogers is not viable under § 1983. We therefore AFFIRM the district court's judgment.