Judgment rendered February 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,442-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

KENNETH WAYNE OWENS                    Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 364,275

Honorable Katherine Clark Dorroh, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Douglas Lee Harville

KENNETH WAYNE OWENS                    Pro Se

JAMES E. STEWART, SR.                        Counsel for Appellee
District Attorney

TOMMY JAN JOHNSON
VICTORIA T. WASHINGTON
Assistant District Attorneys

* * * * *

Before ROBINSON, HUNTER, and MARCOTTE, JJ.

MARCOTTE, J.

This criminal appeal arises from the First Judicial District Court, Parish of Caddo, the Honorable Katherine Dorroh presiding. Defendant, Kenneth Wayne Owens, was convicted of one count of attempted possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1, and was sentenced to five years' imprisonment at hard labor. Defendant now appeals, arguing that he should have been given a warning pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), before being questioned about whether there was a weapon in his car after he was pulled over for a traffic violation. For the reasons expressed below, we affirm Owens' conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

On January 25, 2019, Owens was pulled over by state police for a broken tail light. Owens was asked to provide his driver's license. Trooper Cody Williams then ran the license and noticed that it had been suspended and that Owens had previously been charged with murder, manslaughter, and illegal carrying of weapons. Trooper Williams returned to the rear of Owens' vehicle to retrieve Owens' registration. Before Owens was allowed to return to his vehicle to retrieve his registration, Trooper Williams patted Owens down and asked if there were any weapons in the vehicle. Owens answered in the affirmative. He was then detained, and the weapon, a handgun, was recovered under the driver's seat.

Trooper Williams and Trooper Nicholas Gee proceeded to search parts of Owens' vehicle. While Owens was detained, Trooper Gee and Owens conversed and Owens stated that he had been sideswiped near the tail light of his vehicle. The troopers then determined that Owens had a prior

felony conviction; he was then *Mirandized* and arrested for possession of a firearm or carrying a concealed weapon by a convicted felon. The encounter was recorded via body camera.

On March 6, 2019, Owens was formally charged by bill of information with possession of a firearm or carrying a concealed weapon by a convicted felon, in violation of La. R.S. 14:95.1.

On June 2, 2020, Owens filed a motion to suppress the handgun that was seized as a result of an "illegal, unlawful and unreasonable search." In the motion, Owens argued that a "search" commenced when Trooper Williams entered his vehicle. Owens first argued that he remained at the rear of his vehicle throughout the duration of the stop and therefore was always detained and not free to leave. Second, Owens claimed that he was questioned without being advised of his rights and was not advised of his rights until 15 minutes into the encounter. Third, Owens asserted that the search of the vehicle was not necessary for officer safety because the doors of the vehicle were closed, at one point in the encounter the two troopers were joined by two sheriffs, and Owens was the sole occupant of the vehicle. Additionally, Owens argued that it was not apparent that his tail light was broken, that Trooper Williams never explained the problem with the tail light, and that he was not issued a traffic citation.

The state argued that body camera footage verified that Owens' tail light was broken, and that Owens admitted that he had recently been sideswiped. Therefore, the state argued, at the very least, reasonable suspicion existed to justify the stop. Second, the state argued that Owens was merely stopped for a traffic violation and asked for his driving documents. The state asserted that officers patted Owens down prior to

2

allowing him to return to the vehicle to retrieve those documents. The state argued that Owens was therefore not in custody at that time and the only investigation was for the traffic offense.

The state further argued that this case is similar to *Berkemer v. McCarty*, 468 U.S. 420, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984), wherein the Supreme Court held that persons temporarily detained pursuant to traffic stops are not "in custody" for the purposes of *Miranda*. Finally, the state argued that seizure of the gun was lawful because the search was conducted for officer safety. The state pointed out that Owens was about to reenter the vehicle and, since the encounter had not yet risen to the level of a formal arrest, there remained a presumption that Owens would go back to the car at the end of the stop where he would have access to the weapon.

On September 14, 2020, a hearing on the motion was conducted where Trooper Williams testified. Trooper Williams testified that Owens was stopped in the middle of the day for a tail light that was broken. Trooper Williams stated that he asked Owens for his license, ran the license and noticed that it was suspended and that he had previous charges of murder, manslaughter, and illegal carrying of weapons. Trooper Williams testified that he still needed to retrieve Owens' insurance and registration, and because of Owens' prior criminal history, Trooper Williams patted Owens down and asked if there were any weapons in the vehicle before allowing him to return to the vehicle.

Owens told Trooper Williams about the gun in the vehicle and Trooper Williams then retrieved the firearm and arrested Owens. Trooper Williams further testified that he patted Owens down for officer safety because of Owens' prior criminal history and because he observed Owens

3

"blade" his body away from him, which he suggested is an indication to conceal the waistband. Trooper Williams stated that he did not read Owens his *Miranda* rights prior to retrieving the firearm.

On December 16, 2020, the trial court granted the motion to suppress. On April 9, 2021, this court granted a writ application by the state, reversed the ruling by the trial court, and denied Owens' motion to suppress, holding that "upon learning that Owens had a violent criminal history, the officer took necessary precautions to protect himself by patting Owens down and asking him if there was a gun in the vehicle." Owens sought review with the Louisiana Supreme Court on June 8, 2021, and it denied Owens' writ application. *State v. Owens*, 21-539 (La. 6/8/21), 317 So. 3d 324.

A jury trial was held on November 16-17, 2022. Trooper Williams testified that he stopped Owens for a broken tail light on January 25, 2019, in Caddo Parish. He identified Owens in the courtroom as the same man he arrested that day. Trooper Williams testified that the entire encounter with Owens was recorded on body-cam video, and the 7-minute video was played for the jury.

Trooper Williams testified that the handgun recovered from Owens' car was a Smith & Wesson .40-caliber handgun. Trooper Williams was shown a handgun and confirmed that it was the same one he found in Owens' car on the day of his arrest. The handgun was admitted into evidence.

Trooper Williams further testified that his question to Owens about the presence of a weapon in his car was a "normal rapport question" that he asks in a large majority of traffic stops. Trooper Williams explained that, "in Louisiana, there's a very high chance that most people have weapons in

4

the vehicle," which he said is their right, "but before allowing someone to go back in and put their hands into the vehicle, I like to know if there are weapons and where are they." Thus, according to Trooper Williams, asking Owens about whether or not he had a gun in his car was "not a question of criminal intent."

Timmy Mills ("Agent Mills"), a supervising agent with the Caddo Parish Division of Probation and Parole, testified that Owens was convicted of manslaughter on January 4, 1989, for which he served a sentence of 21 years. Agent Mills further testified that upon completing his sentence, Owens was supervised on parole by his office until July 28, 2015, meaning he is not able to legally possess a gun until at least July 28, 2025.

Officer Mark Rogers ("Off. Rogers") is an officer with the Shreveport Police Department specializing in fingerprint analysis. The parties stipulated that Off. Rogers is an expert in the field of fingerprint identification and comparison. Off. Rogers took fingerprints from Owens in open court, compared them with the fingerprints from Owens in his 1989 manslaughter conviction, and concluded that both sets of prints were from the same individual.

The state rested and Owens did not call any witnesses. The jury returned a unanimous responsive verdict of guilty of attempted possession of a firearm by a convicted felon.

On November 23, 2022, a motion for post-verdict judgment of acquittal was filed. On December 5, 2022, the trial court denied the motion and sentenced Owens to five years' imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Owens now appeals.

**DISCUSSION**

In his counseled brief, appellant's sole assignment of error is that he should have been given a *Miranda* warning before he was asked about the presence of a firearm in his car. He argues that he was detained in relation to a traffic stop and Trooper Williams' line of questioning focused on a criminal investigation distinct from the traffic stop.

Owens argues that *Miranda* warnings are required when investigations cease to be exploratory in nature and when inculpatory statements are sought. Owens asserts that Trooper Williams asked a series of incriminating questions not related to the routine traffic stop for a broken tail light.

Owens argues that his statements were obtained in violation of *Miranda* and the firearm was seized in violation of his rights under the constitution. Therefore, Owens argues that his conviction must be reversed, his sentence vacated, his motion to suppress granted, and the matter remanded to the trial court.

In his pro se brief, Owens argues that: (1) the state failed to provide to defense a written notice of its intent to use an inculpatory statement; (2) the prosecutor used abusive tactics during the hearing on the motion to suppress and at trial; (3) the state presented no authentic document to the jury or the defense regarding the essential element of the crime charged; (3) the state violated his due process rights by not allowing him to cross-examine a third party witness not present at trial; (4) his trial counsel was ineffective because he went to trial without any materials in his case file; and (5) his appellate counsel was ineffective because he "failed to perform a profound

conscientious examination as an advocate." Owens asks this court to reverse his conviction, vacate his sentence, and remand the matter to the trial court.

The state argues that the sole assignment of error in Owens' counseled brief lacks merit, because the admission by Owens was not a custodial statement warranting a *Miranda* warning. The state points out that the conversation between Trooper Williams and Owens related to officer safety only.

In other words, the state argues that the fact that Trooper Williams' license check raised safety concerns, necessitating a pat down and safety inquiry about weapons in the vehicle, did not elevate the situation to a custodial interrogation requiring *Miranda* warnings. The state did not address Owens' pro se assignments of error. The state asks this court to affirm Owens' conviction and sentence.

Because Owens' arguments in his pro se brief seem to suggest that there was insufficient evidence to support his conviction, we will address sufficiency of the evidence first. *See State v. Hearold*, 603 So. 2d 731, 734 (La. 1992)("When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence.")

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). This standard, now codified in La. C.

Cr. P. art. 821, does not afford the appellate court with a means to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517.

The *Jackson* standard is applicable to cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. *State v. Johnson*, 55,254 (La. App. 2 Cir. 8/9/23), 370 So. 3d 91. When the direct evidence is thus viewed, the facts established by the direct evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983).

To support a conviction for possession of a firearm by a convicted felon, the state must prove: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the 10-year statutory period of limitation; and (4) general intent to commit the offense. La. R.S. 14:95.1; *State v. Husband*, 437 So. 2d 269 (La. 1983); *State v. Ray*, 42,096 (La. App. 2 Cir. 6/27/07), 961 So. 2d 607. The general intent to commit the offense of possession of a firearm by a convicted felon may be proved through the actual possession of the firearm or through the constructive possession of the firearm. *See State v. Johnson*, 03-1228 (La. 4/14/04), 870 So. 2d 995; *State v. Chatman*, 43,184 (La. App. 2 Cir. 4/30/08), 981 So. 2d 260. For purposes of the offense of possession of a firearm by a convicted felon, whether the proof is sufficient to establish possession turns on the facts of each case. Further, guilty knowledge may be inferred from the

circumstances of the transaction and proved by direct or circumstantial evidence. *Id.*

Constructive possession of a firearm occurs when the firearm is subject to the defendant's dominion and control. A defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary in nature. *State v. Webber*, 99-23 (La. App. 5 Cir. 7/27/99), 742 So. 2d 952; *State v. Bailey*, 511 So. 2d 1248 (La. App. 2 Cir. 1987), *writ denied*, 519 So. 2d 132 (La. 1988). Constructive possession entails an element of awareness or knowledge that the firearm is there and the general intent to possess it. *State v. Chatman, supra*; *State v. Kennedy*, 42,258 (La. App. 2 Cir. 8/15/07), 963 So. 2d 521.

After a thorough review of the record, and viewing the evidence presented in this case in the light most favorable to the state, a rational trier of fact could find that the state proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of attempted possession of a firearm by a convicted felon.

The evidence established that the defendant was the only person occupying the vehicle when the gun was found. The gun was under the seat he was sitting in and was easily accessible. Furthermore, in presenting evidence of the date of termination of Owens' original felony conviction, the state presented sufficient evidence that the 10-year cleansing period had not elapsed at the time he was arrested with a firearm. Accordingly, the evidence presented by the state was sufficient to prove that Owens was in fact in possession of the weapon and that this possession was enough to sustain a conviction on the charge of attempted possession of a firearm by a felon under La. R.S. 14:95.1.

9

We next address Owen's claim in his counseled brief that he should have been Mirandized before officers questioned him about the presence of a weapon in his vehicle. A traffic stop does not constitute a custodial interrogation; therefore, a defendant's statements to the police officer during the traffic stop do not trigger the *Miranda* requirement. *Berkemer v. McCarty*, *supra*; *State v. Evans*, 48,489 (La. App. 2 Cir. 12/4/13), 130 So. 3d 406; *State v. Lara,* 46,639 (La. App. 2 Cir. 11/2/11), 78 So. 3d 159. Answers to non-custodial questioning at the scene "are admissible without *Miranda* warnings." *State v. Shirley*, 08-2106 (La. 5/5/09), 10 So. 3d 224; *State v. Evans*, *supra*.[1] Further, police officers may take the necessary precautions to protect themselves. *State v. Duhe*, 12-277 (La. 12/10/13), 130 So. 3d 880. A stopped driver's violent criminal history is a valid consideration in such situations. *State v. Williams*, 47,750 (La. App. 2 Cir. 4/10/13), 112 So. 3d 1022, *writ denied*, 13-1394 (La. 12/2/13), 126 So. 3d 502.

A *Miranda* warning is not required for general questioning during a fact-finding process until the investigation ceases to be exploratory in nature, or the person has been taken into custody or otherwise significantly deprived of his freedom. *State v. Evans*, *supra*; *State v. Cooper,* 45,568 (La. App. 2 Cir. 12/8/10), 55 So. 3d 873. Justification for a protective search of the vehicle exists if the officer possesses a reasonable belief, based upon specific and articulable facts which, taken together with rational inferences

---

[1] In *Miranda,* the Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*, 384 U.S. at 444, 86 S. Ct. at 1602.

from those facts, reasonably warrant the officer to believe the suspect is dangerous and the suspect may gain immediate control of weapons. *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983); *State v. Robinson*, 52,974 (La. App. 2 Cir. 3/18/20), 293 So. 3d 193, *writ denied*, 20-00525 (La. 10/20/20), 303 So. 3d 315.

In this case, defendant was stopped pursuant to a valid traffic violation (a broken tail light). During the stop, the officer requested defendant's driver's license and vehicle registration. The officer learned of defendant's violent criminal history when he processed his driver's license. At that point, the officer performed a pat down search for officer safety and inquired about the presence of a gun. Defendant was not placed under arrest until after he admitted to having a firearm in the vehicle. The arrest, not the valid traffic stop, triggered the *Miranda* requirement. Therefore, the police officer was not required to administer the *Miranda* warnings until Owens was placed under arrest. Accordingly, this assignment of error lacks merit.

In his pro se brief, Owens also asserts that the state engaged in "abusive tactics throughout the proceedings." However, Owens did not specify any actions which may have risen to the level of "abusive tactics."

Owens' remaining pro se claims relate to ineffective assistance of counsel. The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. *State v. Wry*, 591 So. 2d 774 (La. App. 2 Cir. 1991).

Claims of ineffective assistance of counsel are more properly raised in an application for post-conviction relief in the trial court because it provides the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. *State v. Reese*, 49,849 (La. App. 2 Cir. 5/20/15), 166 So. 3d 1175, *writ*

11

*denied*, 15-1236 (La. 6/13/16) 192 So. 3d 760.  When the record is sufficient, however, allegations of ineffective assistance of trial counsel may be resolved on direct appeal in the interest of judicial economy. *State v. Ratcliff*, 416 So. 2d 528 (La. 1982).

In the instant case, this court does not have a complete record on which to review any of defendant's brief statements and unsupported allegations of ineffective counsel.  An application for post-conviction relief will afford defendant the opportunity to develop evidence with regard to his claims.  Moreover, a full evidentiary hearing will allow the trial court to review facts and determine the merits of the defendant's claims.  Thus, the defendant's ineffective assistance of counsel claims should be relegated to post-conviction relief.

## CONCLUSION

For the foregoing reasons, defendant's conviction and sentence are affirmed.

**AFFIRMED.**